Kimberly GOOCH, Appellant–Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee–Defendant.

No. 49A02–9806–CV–479.

Court of Appeals of Indiana.

June 30, 1999.

Rehearing Denied Sept. 7, 1999.

John R. Helm, Schreckengast Lovern & Helm, Indianapolis, Indiana, Attorney for Appellant.

Donald L. Dawson, John B. Drummy, Kightlinger & Gray, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

### Case Summary

Appellant-plaintiff, Kimberly Gooch ("Gooch"), appeals the trial court's order entering summary judgment in favor of Appellee-defendant, State Farm Mutual Automobile Insurance Company ("State Farm"). We reverse.

*Issues*

Gooch presents two issues for our review.[1] We find the following dispositive:

I. Whether the trial court erred when it entered summary judgment against Gooch and in favor of State Farm on Gooch's bad faith claim.

*Facts and Procedural History*

The facts most favorable to the judgment show that on September 9, 1990, Gooch, a native of Indiana, was in Michigan on vacation when she was involved in a low impact collision with another driver. When Gooch pulled over to exchange insurance information with the driver, he drove away. Gooch was able to obtain both a description of the driver and his license plate number. The police traced the license plate number to a vehicle owned by Susan Catellier ("Catellier"). Accordingly, Catellier's fiancé, William Price Stewart IV ("Stewart"), was charged with leaving the scene of the accident and failure to yield the right-of-way. The charges were later dismissed because Stewart had an alibi for the day of the accident, and Stewart did not match Gooch's description of the driver. In addition, Catellier notified the police that on the day of the accident, the vehicle to which the license plate number corresponded had no engine, doors, or bumper. Catellier also informed police that she had reported her license plate stolen before the accident.

When Gooch returned to Indiana, she received medical treatment for the injuries she sustained in the accident. Thereafter, she made a claim with State Farm under her uninsured motorist coverage. State Farm offered Gooch four thousand five hundred dollars ($4,500) plus medical expenses to settle her claim; however, Gooch informed State Farm that she believed her claim was worth twenty five thousand dollars ($25,000). Gooch then retained legal counsel. Gooch's counsel sent communications to State Farm inquiring as to whether State Farm had as-

certained the identity of the unknown hit-and-run driver. State Farm responded that their investigation revealed the identity of the driver as Stewart who was uninsured and that they were proceeding with the claim under Gooch's uninsured motorist coverage.

As Gooch and State Farm were unable to reach a settlement, Gooch filed suit against State Farm in Indiana on July 6, 1992. State Farm, however, allegedly informed Gooch that she must file suit in Michigan and sue both State Farm and Stewart. In response, Gooch's counsel notified State Farm that the charges against Stewart had been dropped because Stewart had an alibi for the day of the accident and because Gooch's description of the hit-and-run driver did not match a description of Stewart. Despite this communication, State Farm filed a Motion to Dismiss the suit in Indiana. Gooch's counsel again notified State Farm there was no evidence indicating Stewart was the hit-and-run driver, and therefore, the suit against Stewart would be a frivolous one and would involve additional costs and delay for Gooch. State Farm, however, maintained that the claim must be filed against Stewart and State Farm in Michigan in order to protect State Farm's subrogation rights.

On November 11, 1992, Gooch amended her complaint in Indiana to allege that State Farm was acting in bad faith. She also filed a response to State Farm's Motion to Dismiss and filed a Motion for Partial Summary Judgment. The trial court denied both State Farm's motion to dismiss and Gooch's Motion for Partial Summary Judgment on February 1, 1993.

Following the denial of these motions, Gooch filed suit against Catellier and Stewart in Michigan on June 17, 1993. On October 7, 1993, Gooch amended her Michigan complaint to assert a claim against State Farm under the uninsured motorist coverage of her policy. On July 13, 1994, State Farm and Gooch filed a stipulation providing for the

---

1. We decline to address the issue regarding whether the trial court erred by denying Gooch's Motion to Shorten Time because we conclude any further evidence is unnecessary for our review of this appeal. Additionally, we find it unnecessary to discuss State Farm's alleged fail-

ure to reimburse Gooch's deductible and to pay some of her medical expenses in a timely manner. While these issues may be important evidence for a jury's consideration, we conclude that the issue addressed hereinafter is sufficiently dispositive for purposes of this appeal.

bifurcation of the uninsured motorist claim and the bad-faith claim in the action underlying this appeal. The stipulation also provided that Gooch would dismiss State Farm from the Michigan suit and that State Farm would assume control of that litigation.

A jury trial was held in Indiana from May 9 to May 11, 1995 on the underlying uninsured motorist claim wherein Gooch was awarded twenty-five thousand five hundred dollars ($25,500). State Farm filed a Motion for Summary Judgment on the remaining bad faith claim on February 26, 1997. Shortly before the summary judgment hearing, Gooch learned that State Farm may have had a policy to fully litigate all low damage collisions in order to make it financially unfeasible for an insured to obtain a recovery. Accordingly, Gooch's counsel filed a Request for Admissions and a Motion to Shorten Time within which to respond to Gooch's Request for Admissions on January 5, 1998. The trial court denied the latter motion on January 13, 1998. After a summary judgment hearing on January 16, 1998, the trial court granted State Farm's Motion for Summary Judgment. This appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

### I.

### Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App. 1994), *trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

### The Duty of Good Faith and Fair Dealing

Under Indiana law, there is an implied duty of good faith in all insurance contracts that an insurer will act in good faith with its insured. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind.1993). In *Erie*, our supreme court stated that the duty of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of her claim. *Id.* at 519. The supreme court also stated, however, that these obligations do not comprise an exhaustive list of an insurer's duties under the obligation of good faith and fair dealing. *Id.* The *Erie* court also cautioned that a cause of action does not arise under the doctrine of good faith and fair dealing every time an insurance claim is erroneously denied. *Id.* at 520.

Gooch argues that State Farm attempted to force her to settle her claim, breaching their express obligation to refrain from such conduct. This obligation, like the other enumerated obligations, stems from the *sui generis* nature of the insurance contract. *See id.* at 518–19. The relationship between the insurer and the insured arising from the insurance contract can be fiduciary in nature and often adversarial. *Id.* Accordingly, the *Erie* court reasoned that the damage from a bad-faith refusal to pay a valid claim is easily foreseeable, and therefore, an action in tort is warranted. *Id.* Gooch presented evidence that her attorney informed State Farm that Stewart could not have been the hit-and-run driver and that the charges

against Stewart had been dropped. In the face of this written communication, State Farm continued to assert that Stewart was the driver of the hit-and-run vehicle and did not conduct any form of investigation aside from securing the police report until Gooch had filed a bad-faith claim against it. In light of the insurance provision requiring Gooch to file suit against the known driver and State Farm's insistence that she do so, we conclude that Gooch has presented a genuine issue of material fact as to whether State Farm intentionally failed to conduct a more extensive investigation in order that Gooch would be forced into filing suit in Michigan. Such conduct could be construed as a bad-faith attempt to force Gooch to settle her claim.

▇▇▇ State Farm reminds us, however, that the lack of a diligent investigation alone is insufficient to support a claim of bad-faith. *Id.* at 520; *see also Continental Casualty Co. v. Novy,* 437 N.E.2d 1338, 1356 (Ind.Ct.App. 1982). The rational underlying this principle is that "negligence cannot be the basis for awarding punitive damages." *Continental,* 437 N.E.2d at 1356, *quoting Nationwide Mut. Ins. Co. v. Neville,* 434 N.E.2d 585 (Ind.Ct.App.1982). In *Continental,* this court also stated:

> [The insured] argue that the insurer is under a duty to promptly investigate the facts underlying an uninsured motorist claim and that a breach of its duty of good faith and fair dealing can be found even where the insurer maintains actual, *non-reckless* doubts as to its liability, if a reasonable investigation would have disclosed information making those doubts untenable. Not only is there no direct Indiana authority supporting such a proposition, but we believe that in this extreme form the Crafts' contention conflicts with the accepted law that the insured has the burden of showing that the preconditions to the insurance company's obligation to pay have been met.

*Id.* (emphasis added) *quoting Craft v. Economy Fire and Casualty Co.,* 572 F.2d 565,

571–72 (7th Cir.1978). Again, however, in this case, Gooch has presented evidence suggesting that State Farm's failure to conduct an investigation may have been an intentional act designed to coerce Gooch into a settlement by forcing her to file suit against Stewart in an inconvenient forum. For example, Gooch presented evidence that State Farm attempted to dissuade her from retaining an attorney, Gooch informed State Farm that Stewart could not have been the driver of the hit-and-run vehicle, State Farm never obtained Gooch's statement regarding the accident, State Farm only obtained Catellier's statement after the bad-faith claim was filed, and State Farm did not initially pursue its subrogation rights against Stewart in Michigan.[2] With regard to the latter incident, State Farm asserts that this failure was the result of a mistake. Nevertheless, a final determination of the significance of all of the evidence presented by Gooch is a question for the jury. While we do not believe that the failure to conduct an adequate investigation always constitutes bad-faith, we do believe that the facts of this case present a genuine issue of material fact as to whether State Farm deliberately failed to conduct an investigation so that they could enforce a provision of Gooch's insurance policy in bad-faith *when they allegedly already knew what a more extensive investigation would have likely disclosed.* Thus, Gooch is not alleging that State Farm negligently failed to conduct an investigation; rather, she is alleging that this failure was an intentional act designed to conceal the true facts underlying her claim.

### Post-litigation Conduct

▇▇▇ State Farm acknowledges its duty to act in good faith with its insured, however, State Farm maintains that this duty does not extend to its litigation conduct in defending itself against a suit by its insured. Although no Indiana case has specifically addressed this issue, State Farm cites cases from other jurisdictions which hold that an insurer's post-litigation conduct should not be used as evidence of bad faith.

---

**2.** In a deposition, State Farm claims specialist John Brown testified that State Farm eventually "took an assignment and got a judgment" from Stewart. (R. 312). State Farm has not presented any evidence of the nature of the judgment or the circumstances under which it was obtained.

In *Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 450 S.E.2d 582 (1994), the Supreme Court of South Carolina held that "bad faith must be judged by the evidence before it at the time it denied the claim." *Id.* at 448–49, 450 S.E.2d 582. Thus, after suit is filed for a denial of a claim, any evidence of litigation conduct "is not relevant to the propriety of the conduct of the insurer at the time of its refusal." *Id.* State Farm alleges that the *Howard* court stands for a blanket prohibition on the use of post-litigation conduct as evidence in a bad-faith claim. We do not read the· *Howard* decision so broadly. The *Howard* court relied in part upon the Supreme Court of Alabama's decision in *Nationwide Mut. Ins. Co. v. Clay*, 525 So.2d 1339 (Ala.1987), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 863, 102 L.Ed.2d 988 (1989). Ironically, the insurer in *Clay* attempted to use conduct which occurred after the bad-faith denial of the claim to establish that it was not acting in bad-faith toward its insured. The *Clay* court held that evidence of an insurer's conduct after the incident which gave rise to the bad-faith claim was irrelevant to that claim. *Id.*·at 1342.

The core of the *Howard* and *Clay* decisions, therefore, rests on the lack of relevance of post-litigation conduct as it applies to the original denial of an insured's claim. In fact, the *Howard*·court specifically stated that if the incident giving rise to the bad-faith claim is not a claim denial, then "evidence that arises after the filing of the *bad-faith claim* is not relevant." *Howard*, 450 S.E.2d at 584 (emphasis added). In the case at bar, Gooch seeks to use evidence of conduct which occurred before the filing of the *bad-faith claim.* Moreover, the conduct in question is relevant as to whether State Farm's failure to investigate the allegations of Gooch was a bad-faith attempt to rely on its position that the driver of the hit-and-run vehicle was known.

As State Farm concedes, many cases support the use of post-litigation conduct to support a bad-faith claim. In *Palmer v. Farmers Ins. Exch.*, 261 Mont. 91, 861 P.2d 895 (1993), the Supreme Court of Montana held that an insurer's duty to deal fairly with its insured continues when an insured files a complaint against it; however, the *Palmer* court concluded that this continuing duty "does not necessarily render evidence of an insurer's post-filing conduct admissible." *Palmer*, 861 P.2d at 913–14. In determining when post-litigation conduct can be used as evidence of bad-faith, the *Palmer* court devised a balancing test: "When the insurer's post-filing conduct has some relevance, the court must weigh its probative value against the inherently high prejudicial effect of such evidence, keeping in mind the insurer's fundamental right to defend itself." *Id.* at 915. Like the *Howard* and *Clay* decisions, the concern of the *Palmer* court centered on the principle of relevance:

> When evaluated through the prism of the substantive law, an insurance company's postfiling conduct, particularly its litigation conduct, has little relevance to proving that the insurer's prefiling actions resulted in the wrongful denial of policy benefits. Litigation, in almost all cases, does not commence until after the policyholder's claim has been denied or the insurer has failed to respond to a policyholder's claim within a sufficient amount of time. In contrast, the wrongful tort occurs, or does not occur contemporaneously with the "wrongful denial of coverage"—an act that occurs well before any improper litigation conduct takes place.... [T]he tort itself occurs when the contract is breached unreasonably.

*Id.* In the case at bar, the conduct in question occurred after Gooch filed her lawsuit based on the uninsured motorist claim but before she filed the bad-faith claim. Moreover, the conduct is relevant to whether State Farm failed to take certain actions in order that they could maintain a legal position that would involve substantial cost and delay.

State Farm further argues that using post-litigation conduct will violate public policy concerns by "usurping the trial court's control over the litigation process." Brief of Appellee, p. 28. Additionally, citing *International Surplus Lines Ins. Co. v. University of Wyoming Research Corp.*, 850 F.Supp. 1509 (D.Wyo.1994), State Farm argues that punishing an insurer's counsel for litigation

practices would interfere with the counsel's duty to "zealously represent their clients within the bounds permitted by law." Brief of Appellee, p. 26. We recognize the validity of State Farm's arguments in this regard as well as its contention that remedies already exist for the misconduct of an insurer's counsel; however, we do not believe that Gooch's complaint goes to the heart of the litigation process. Contrary to State Farm's representations, the focus of Gooch's complaint is not State Farm's Motion to Dismiss. Rather, Gooch complains that State Farm intentionally refused to further investigate a matter brought to its attention in order to give its counsel the factual predicate upon which to rest its Motion to Dismiss. State Farm concedes that it was attempting to enforce a provision of Gooch's insurance policy stating that if the driver of the uninsured motorist is known "the insured shall . . . file a lawsuit in the proper court against the owner or driver of the uninsured motor vehicle . . . and [State Farm]." (R. 42). If, indeed, this position was made in bad-faith, we are unwilling to allow State Farm to escape liability because its bad-faith attempt to enforce a provision of Gooch's insurance policy was a "litigation position." In short, the relevance of the Motion to Dismiss is not to inquire as to State Farm's counsel's behavior; rather, such evidence is relevant to State Farm's possible motivation for failing to further investigate the accident when it already knew there existed compelling evidence that Stewart could not have been the hit-and-run driver. We conclude that a genuine issue of material fact exists as to whether this behavior was designed in bad-faith to force Gooch to settle her claim. Therefore, the trial court erred by entering summary judgment in favor of State Farm.

Reversed and remanded for proceedings consistent with this opinion.

SHARPNACK, C.J., and DARDEN, J., concur.