**John FREIDLINE and Donna Freidline, Appellants–Defendants/Third Party Plaintiffs,**

v.

**SHELBY INSURANCE COMPANY, Appellee–Third Party Defendant.**

No. 71A03–0004–CV–132.

Court of Appeals of Indiana.

Nov. 29, 2000.

Rehearing Denied Feb. 21, 2001.

Fred R. Hains, Fred R. Hains & Associates, South Bend, Indiana, Attorney for Appellants.

Daniel W. Glavin, Beckman, Kelly & Smith, Hammond, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Defendants/Third Party Plaintiffs–Appellants, John Freidline and Donna Freidline (the "Freidlines"), appeal the trial court's order granting summary judgment in favor of the Third Party Defendant Appellee, Shelby Insurance Company (Shelby).

We reverse and remand with instructions.

### ISSUES

The Freidlines raise three issues on appeal, which we consolidate and restate as the following two issues:

1. Whether the pollution exclusion in the Shelby policy precludes coverage for the plaintiffs' claims.

2. Whether Shelby's denial of coverage was in bad faith.

### FACTS AND PROCEDURAL HISTORY

On July 29, 2000, the plaintiffs, Charmaine Buckingham, Kareemah El-amin and Aisha Patton (jointly referred to as the "plaintiffs"), filed a Complaint against the defendants, the Freidlines, and co-defendants, Steve Beachey d/b/a Steve's Carpet Service, Arnold Joers d/b/a Joers Floor Center of Indiana, Inc., Valley Development Company, Inc., Armstrong Inc., and The W.W. Henry Co.[1] The Freidlines own the JMS building located in South Bend, Indiana. The plaintiffs contend that in August 1997, they were exposed to harmful toxic fumes from substances used to install carpet in the JMS building. At the time of the incident, the plaintiffs were working in the building as telemarketers,

---

1. Arnold Joers and Valley Development Company, Inc., were later dismissed from this lawsuit.

and were allegedly injured from exposure to fumes from carpet glue used to install the carpet.

On September 16, 1999, the Freidlines filed their answer and a third party complaint against third party defendant, Shelby. At the time of the incident alleged in the plaintiffs' complaint, the JMS building was insured under a policy of insurance with Shelby. The Freidlines notified Shelby of this lawsuit and requested that Shelby defend them in this lawsuit and indemnify them in the event they were found liable. Shelby later notified the Freidlines that it would neither defend them in this action nor indemnify them in this matter based on the insurance policy's exclusion of coverage for bodily injury and property damage caused by pollution. Thus, the Freidlines filed a third party complaint against Shelby to enforce their rights under the insurance policy at issue. Additionally, the Freidlines allege that Shelby denied them coverage in bad faith.

On January 28, 2000, the Freidlines filed a motion for summary judgment on their third party complaint against Shelby. A hearing was held on this motion on March 15, 2000, and on March 16, 2000, the trial court issued an Order denying the Freidlines' motion for summary judgment and granting summary judgment in favor of Shelby.

This appeal followed.

## DISCUSSION AND DECISION
### Standard of Review

When reviewing an entry of summary judgment, this court applies the same standard as the trial court. *City of Fort Wayne v. Kotsopoulos,* 704 N.E.2d 1069, 1070 (Ind.Ct.App.1999). "Summary judgment is appropriate when the evidentiary matter designated to the trial court shows both that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Aide v. Chrysler Financial Corp.,* 699 N.E.2d 1177, 1180 (Ind.Ct.App.1998),

*trans. denied.* We will affirm a summary judgment on appeal if it is sustainable under any theory or basis found in the evidentiary matter designated to the trial court. *J.S. Sweet Co., Inc. v. White County Bridge Com'n,* 714 N.E.2d 219, 222 (Ind. Ct.App.1999). Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Deaton v. City of Greenwood,* 582 N.E.2d 882, 884 (Ind.Ct.App. 1991). "When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter *de novo.*" *Mahowald v. State,* 719 N.E.2d 421, 424 (Ind.Ct.App.1999). Consequently, because the interpretation of a contract is a question of law, cases involving the interpretation of insurance contracts are particularly appropriate for summary judgment. *Westfield Companies v. Rovan, Inc.,* 722 N.E.2d 851, 855 (Ind.Ct.App.2000).

### Pollution Exclusion

The Freidlines argue that the trial court erred in granting summary judgment in favor of Shelby. Specifically, the Freidlines assert that the pollution exclusion included in the Shelby policy is ambiguous and does not preclude coverage for the plaintiffs' claims. In response, Shelby contends that the language in the pollution exclusion clearly excludes coverage for the claims asserted by the plaintiffs and thus, it has no obligation to defend or indemnify the Freidlines.

Insurance contract provisions are subject to the same rules of construction as other contracts. *Great Lakes Chemical Corp. v. International Surplus Lines Ins. Co.,* 638 N.E.2d 847, 850 (Ind.Ct.App. 1994). "When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract." *Id.* In determining the meaning of contract provisions, we consider all of the provisions of the contract and not just individual words, phras-

es, or paragraphs. *Anderson v. State Farm Mut. Auto. Ins. Co.,* 471 N.E.2d 1170, 1172 (Ind.Ct.App.1984). Thus, the insurance policy must be construed as a whole. *Amica Mut. Ins. Co. v. Cincinnati Ins. Co.,* 494 N.E.2d 358, 360 (Ind.Ct.App. 1986). If the language is clear and unambiguous, it should be given its plain and ordinary meaning. *Town of Orland v. National Fire & Cas. Co.,* 726 N.E.2d 364, 370 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* We also must accept an interpretation of the contract language that harmonizes the provisions rather than one which supports a conflicting version of the provisions. *Anderson,* 471 N.E.2d at 1172. Nonetheless, "[p]olicy terms are interpreted from the perspective of an ordinary policyholder of average intelligence," *Gallant Ins. Co. v. Amaizo Federal Credit Union,* 726 N.E.2d 860, 864 (Ind.Ct.App. 2000), *trans. denied,* and if reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous. *Town of Orland,* 726 N.E.2d at 370. Further, if an ambiguity exists, we must construe the language strictly against the insurer and in favor of coverage for the insured. *Gallant Ins. Co.,* 726 N.E.2d at 864; *Town of Orland,* 726 N.E.2d at 370; and *Great Lakes Chemical Corp.,* 638 N.E.2d at 850.

The exclusion for pollution in the Shelby policy reads as follows:

2. **Exclusions**

This insurance does not apply to:

\* \* \*

f. **Pollution**

(1) **Bodily injury** and **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or sub contractors working directly or indirectly on any insured's behalf are performing operations;

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to **bodily injury** or **property damage** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) does not apply to **bodily injury** or **property**

**damage** arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any lost, cost or expense arising out of any:

(a) Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(R. 96).

Recently, this court found a similar pollution exclusion to be ambiguous and construed it against the insurance carrier to not exclude coverage. *Travelers Indem. Co. v. Summit Corp. of America,* 715 N.E.2d 926, 935 (Ind.Ct.App.1999). The Travelers court noted that:

[O]ur supreme court had twice recently considered exclusionary language that is, for practical purposes, the same as in the exclusions here. Both with regard to the duty to indemnify in *American States Ins. Co. v. Kiger* and the duty to defend in *Seymour Mfg. Co. v. Commercial Union Ins.* our supreme court has determined the exclusion to be ambiguous and has construed it against the insurer. *See American States Ins. Co. v. Kiger,* 662 N.E.2d 945, 948–949 (Ind.

1996), *reh'g denied.; Seymour Mfg. Co. v. Commercial Union Ins.,* 665 N.E.2d 891, 892 (Ind.1996), *reh'g denied.*

*Travelers Indem. Co.,* 715 N.E.2d at 935.

In *Kiger,* the insured, a gas station owner, sued its insurance carrier after the insurance carrier refused to provide coverage for a claim for damages brought against the insured by the Indiana Department of Environmental Management (IDEM). *Kiger,* 662 N.E.2d 945. IDEM's complaint against Kiger was to recover clean-up costs resulting from gasoline contamination in and around Kiger's gasoline station. *Id.* at 947. Kiger filed a third party complaint against its insurance carrier, American States, alleging that American States was obligated to defend and indemnify Kiger against IDEM's claims. *Id.* In reviewing the definition of pollutants set forth in the American States' policy, which is identical to the definition set forth in the Shelby policy, the *Kiger* court stated:

Clearly, this clause cannot be read literally as it would negate virtually all coverage. For example, if a visitor slips on a grease spill then, since grease is a "chemical," there would be no insurance coverage. Accordingly, this clause requires interpretation. As mentioned in Section I, the interpretation of insurance policies is not new to this Court. We are particularly troubled by the interpretation offered by American States, as it makes it appear that Kiger was sold a policy that provided no coverage for a large segment of the gas station's business operations. In addition, the language excludes coverage for damage caused by "alleged discharge[s]" of "pollutants," which could be understood to mean that a mere allegation of pollution discharge could defeat all coverage. In any event, since the term "pollutant" does not obviously include gasoline and, accordingly, is ambiguous, we once again must construe the language against the insurer who drafted it.

*Id.* at 948. Consequently, the court concluded that American States was required to defend and possibly indemnify Kiger. *Id.* at 949. In *Seymour Mfg. Co.,* 665 N.E.2d 891, our supreme court again visited this issue, and relying on *Kiger,* found that the insured was entitled to judgment as a matter of law on its claim that the insurance company was required to defend it against an action by the EPA for environmental clean-up costs due to leaking hazardous materials.

■■■■ Based on this case law, it is apparent that the pollution exclusion found in the Shelby policy is ambiguous. The plaintiffs sued the Freidlines for injuries resulting from the exposure to fumes emanating from the substances used to install the carpet. Shelby would prefer we focus on the plaintiffs' use of the term "fumes," however, the plaintiffs do not simply complain that they were injured by fumes, but that they were injured by the fumes coming from the substances used to install the carpet. While the policy's definition of pollutants includes the term "fumes," it does not include carpet glue or any other substance used to install carpet. Furthermore, as determined by the *Kiger* court, this clause cannot be read literally as it would negate virtually all coverage. *Kiger,* 662 N.E.2d at 948. Thus, following the *Kiger* decision, since the term "pollutant" does not obviously include carpet glue or substances used to install carpet, the term is ambiguous. *See Id.* Consequently, the policy must be construed against the insurer who drafted it to not exclude coverage for the plaintiffs' claims against the Freidlines. As a result, Shelby is obligated under the policy to defend and indemnify the Freidlines.

### Bad Faith Claim

The Freidlines also assert that Shelby acted in bad faith in refusing to defend them on the plaintiffs' claims and in refusing to indemnify them. The trial court granted Shelby summary judgment on the Freidlines' bad faith claim. The facts with regard to this issue are not in dispute, thus, we decide this issue as a matter of law. *See Mahowald,* 719 N.E.2d at 424.

■■■■ "Under Indiana law, there is an implied duty of good faith in all insurance contracts that an insurer will act in good faith with its insured." *Gooch v. State Farm Mut. Auto. Ins. Co.,* 712 N.E.2d 38, 40 (Ind.Ct.App.1999). Breach of an insurance company's duty to deal with its insured in good faith allows for a cause of action in tort. *Id.* However, "[t]he erroneous denial of coverage does not necessarily violate an insurance company's duty of good faith." *USA Life One Ins. Co. of Indiana v. Nuckolls,* 682 N.E.2d 534, 541 (Ind.1997). In Indiana an insurance company has the right "to disagree with an insured's claim as long as the disagreement is based on good faith." *Indiana Insurance v. Plummer Power Mower,* 590 N.E.2d 1085, 1093 (Ind.Ct. App.1992). Consequently, an insured's claim for attorney's fees requires bad faith by the insurer. *Mikel v. American Ambassador Cas. Co.,* 644 N.E.2d 168, 172 (Ind.Ct.App.1994). "Proof of bad faith is defined as clear and convincing evidence which establishes the insurer had knowledge that there was no legitimate basis for denying liability." *Id.*

■■■■ However, the duty to defend is broader than an insurance company's duty to indemnify or its coverage liability. *Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co.,* 665 N.E.2d 891, 892 (Ind.1996). "It has been established that an insurance company which refuses to defend an insured acts at its own peril." *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce,* 728 N.E.2d 919, 922 (Ind.Ct.App.2000). An insurer, who has made an independent determination that it has no duty to defend, must protect its interest by either hiring independent counsel and defending its insured under a reservation of rights or by filing a declaratory judgment action for a judicial determination of its obligations under the policy. *Id.* at 922–923.

Here, based on the previously discussed Indiana case law finding "pollution exclusions" ambiguous, the Freidlines argue that Shelby did not have a good faith basis for disputing coverage and refusing to defend against the plaintiffs' claims. We agree. The Freidlines' counsel provided Shelby's counsel with this case law, but Shelby still refused to defend or indemnify the Freidlines in this cause of action. Thus, since Shelby knew that the "pollution exclusion" it was relying on to deny coverage to the Freidlines had been previously found ambiguous by the Indiana Supreme Court, Shelby did not act in good faith in refusing to defend and indemnify the Freidlines. Especially in light of the case law holding that the duty to defend is broader than the duty to indemnify. *Seymour Mfg. Co., Inc.*, 665 N.E.2d at 892.

Therefore, we conclude as a matter of law that the trial court erred in granting summary judgment in favor of Shelby and in denying the Freidlines' motion for summary judgment.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in denying summary judgment for the Freidlines. We reverse and instruct the trial court to issue an order granting summary judgment in favor of the Freidlines on their third party complaint. Additionally, we instruct the trial court to hold a hearing to determine the amount of attorney fees to be awarded on the Freidlines' bad faith claim.

Reversed and remanded with instructions.

BARNES, J., and BAILEY, J., concur.