**David BRADLEY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 49A02–0107–CR–494.**

Court of Appeals of Indiana.

June 19, 2002.

Paul T. Fulkerson, Skiles Hansen Cook & DeTrude, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

David Bradley appeals his conviction and sentence for Voluntary Manslaughter,[1] a Class A felony, and Carrying a Handgun Without a License,[2] a Class C misdemeanor.[3] He presents four issues for our review:

---

1. Ind.Code § 35–42–1–3 (Burns Code Ed. Repl.1998).

2. Ind.Code § 35–47–2–1 (Burns Code Ed. Repl.1998).

3. On the Class A felony, Bradley was sentenced to an aggregate of forty-five years. The thirty-year presumptive sentence was enhanced by three separate five-year enhancements, one of which was for use of the handgun. It is the use of a deadly weapon which elevates voluntary manslaughter from a Class

(1) Whether the trial court erred in admitting photographs into evidence;

(2) Whether the trial court erred in refusing to allow testimony from an impeachment witness;

(3) Whether the trial court erred in denying a proposed jury instruction; and

(4) Whether the trial court applied proper aggravating circumstances in sentencing.

We affirm in part and reverse in part.

During the early afternoon hours on January 27, 1999, Timmy Watkins went to the apartment of James Davis and his girlfriend, Jackie. At approximately the same time, Bradley, along with his girlfriend, Linda Williams, and another man also went to the apartment. Watkins and Bradley seemed to have some disagreement and Bradley reached into his pocket, which prompted Davis to tell him that he did not want any trouble in his home. Bradley pushed Davis to the side, pulled a handgun from his jacket, and shot Watkins twice. Bradley left the apartment, but momentarily returned and shot at Watkins four or five additional times. Watkins suffered from six gunshot wounds and died as a result.

After spending several days living with different relatives, Bradley and Williams fled to Milwaukee, Wisconsin, and later to Chicago, Illinois. They were arrested in Chicago and subsequently brought back to Indiana for trial. Bradley was charged with Murder [4] and Carrying a Handgun Without a License. Williams was charged

with Transferring a Handgun to a Felon,[5] a Class C felony, Assisting a Criminal,[6] a Class C felony, and Carrying a Handgun Without a License,[7] a Class A misdemeanor. Williams pleaded guilty to Assisting a Criminal and Carrying a Handgun Without a License and agreed to cooperate in the State's case against Bradley in exchange for dismissal of the charge of Transferring a Handgun to a Felon.

I

*Admission of Photographs*

The admission of evidence falls within the sound discretion of the trial court. *Swingley v. State,* 739 N.E.2d 132, 133 (Ind.2000). We review the admission of photographic evidence for an abuse of discretion. *Id.* Photographic evidence which is relevant may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* If photographs, even those gruesome in nature, act as interpretive aids for the jury and have strong probative value, they are admissible. *Id.*

Bradley contends that the trial court erred in allowing the State to introduce into evidence a photo array from which Davis identified Bradley as the perpetrator following the shooting. He specifically claims that the evidence was cumulative and that the photographs gave the appearance of being a mug shot, the use of which is disapproved.

At trial, Bradley made no objection to the photo array upon the grounds that it was made using mug shots. A

B felony to a Class A felony. *See* Part IV, *infra.*

4. Ind.Code § 35–42–1–1 (Burns Code Ed. Supp.2001).

5. Ind.Code § 35–47–2–7 (Burns Code Ed. Repl.1998).

6. Ind.Code § 35–44–3–2 (Burns Code Ed. Repl.1998).

7. I.C. § 35–47–2–1.

defendant may not argue one ground for an objection at trial and then raise new grounds upon appeal. *Gill v. State*, 730 N.E.2d 709, 711 (Ind.2000). Therefore, Bradley has waived his claim that the photographs were improperly admitted because they were mug shots. Waiver notwithstanding, while the use of mug shots is disapproved because the jury may infer criminal history on part of the defendant, the use of mug shots is not improper when relevant and necessary to identify the perpetrator of a crime. *Monegan v. State*, 721 N.E.2d 243, 253 (Ind.1999). In this case, the witnesses knew Bradley as "Mark," and the use of the photo array was necessary to explain the identification of Bradley as the killer. *See Id.* (holding that it was necessary to use the photo array when the witness knew the defendant by an alias). Therefore, the trial court properly allowed the admission of the photographs into evidence.

■■■ Bradley also challenges the admission of certain autopsy photographs. He asserts that the photographs were cumulative of the testimony of the pathologist and were used to prejudice the jury against him. As a general rule, autopsy photographs are inadmissible if they show the body in an altered condition. *Swingley*, 739 N.E.2d at 133. The concern with photographs showing the body in an altered condition is that the jury may impute the work of the physician to the defendant and render the defendant responsible for the cuts, incisions, and indignity of the autopsy. *Id.* Testimony about the procedure performed by the pathologist which explains the presence of the cuts and incisions caused during the autopsy reduce the potential for confusion. *See Fentress v. State*, 702 N.E.2d 721, 722 (Ind.1998).

■■■ The photographs which were admitted at trial showed the wounds caused by the gunshots to Watkins. The pathologist relied upon the photographs to explain the location of the shots and to point out to the jury which shot was fatal. This use of the photographs was relevant and appropriate. *Hatcher v. State*, 735 N.E.2d 1155, 1160 (Ind.2000). Also, the admission of cumulative evidence alone is not grounds for reversal. *Marshall v. State*, 621 N.E.2d 308, 316 (Ind.1993). Therefore, we will reverse only if the probative value of the photographs is substantially outweighed by the danger of unfair prejudice.

Several photographs showed only small entry and exit wounds from the bullets and were not gruesome in nature. The probative value of each of these photographs was high, and the risk of being inflammatory was low. Therefore, the trial court did not err in admitting those photographs into evidence. One photograph, State's Exhibit 41, did show the body in an altered condition—a surgical incision which was sewn shut after doctors attempted to save Watkins' life. This photograph was highly probative as it was the only photograph to show what the pathologist described as the fatal wound. The surgical incision was neither gruesome nor highly inflammatory. Also, the pathologist testified that the incision was made by the doctors performing surgery, reducing any chance that the jury may have been confused about its cause and imputed the cause to Bradley. The trial court did not err in admitting any of the autopsy photographs into evidence.

## II

### *Impeachment Witness Testimony*

■■■ "Trial court's are given wide discretionary latitude in discovery matters and their rulings will be given deference on appeal." *Williams v. State*, 714 N.E.2d 644, 649 (Ind.1999), *cert. denied* 528 U.S. 1170, 120 S.Ct. 1195, 145 L.Ed.2d 1099

(2000). The trial court's determination of violations and sanctions will be affirmed absent clear error and resulting prejudice. *Id.* "The most extreme sanction of witness exclusion should not be employed unless the defendant's breach has been purposeful or intentional or unless substantial and irreparable prejudice would result to the State." *Wiseheart v. State*, 491 N.E.2d 985, 991 (Ind.1986).

■ Bradley contends that the trial court erred in excluding the testimony of what he characterizes as an impeachment witness. Following the testimony of Williams, in which she claimed that Bradley had shot Watkins, Bradley informed the court that he wished to call Laketa Starks to testify that Williams had told her that neither Bradley nor Williams were at the home at the time of the shooting or had any part in it. The trial court allowed the defense to make an offer of proof to Starks' testimony, but did not allow the testimony to be submitted to the jury.

During the trial, it was made known to Bradley's counsel that Starks was willing to testify that Williams had told her that neither she nor Bradley had any part in the shooting and murder of Watkins. Testimony by Starks revealed that she had originally heard this information while Bradley and Williams were in jail in Chicago. Starks' testimony also revealed that she had heard the information on several more occasions. Not only was the information known to Starks, it was also known to Bradley and his mother. This was information which Bradley wished to use to impeach the testimony of Williams, whom he knew was going to be called as a witness against him for several months. Under these circumstances, it appears that the delay in notifying counsel of the impeachment witness was intentional on the part of Bradley. *See Bartruff v. State*, 528 N.E.2d 110 (Ind.Ct.App.1988) (holding that

defendant could not call his son as a witness when he knew of his son's potential testimony more than six months before the trial), *trans. denied.*

The trial court also determined that there would be substantial prejudice to the State if the testimony were allowed. The trial court noted that Starks was the type of witness who would not be easy to prepare to cross-examine. The court also noted that there were many things which the parties did not know about Starks and that the court could not expect the Prosecutor to be able to prepare for cross-examination in the middle of the trial. Both the intentional withholding of information about the witness and the prejudicial effect to the State from allowing the witness to testify at such a late stage in the trial justify the trial court's exclusion of the witness.

## III

### *Jury Instruction*

■■ We review a trial court's refusal to give a tendered jury instruction for an abuse of discretion. *Forte v. State*, 759 N.E.2d 206, 209 (Ind.2001). We consider whether the instruction correctly states the law, is supported by evidence in the record, and is covered in substance by other instructions which were given. *Id.*

■ Bradley asserts that the trial court erred in failing to give the following tendered instruction: "Mere presence at the scene of a crime, association with the principals, knowledge that the crime is being committed and the opportunity to commit it are not sufficient evidence to support a conviction beyond a reasonable doubt." Appendix at 184. We need not determine whether the instruction is a correct statement of the law as there is no evidence in the record to support the giving of the instruction. Three eyewitnesses testified that Bradley shot Watkins several

times. While Bradley asserts that the evidence does connect him to the scene of the crime, he contends that the witnesses' credibility was suspect and therefore, the jury should not have inferred from their testimony that he shot Watkins. However, the credibility of the witnesses aside, the only evidence before the jury was that Bradley fired the shots, which goes far beyond being merely present at the scene. The trial court did not err in refusing to give the tendered jury instruction.

## IV

### Sentencing

 Sentencing lies within the sound discretion of the trial court. *Walter v. State*, 727 N.E.2d 443, 446 (Ind.2000). We review the trial court's decision to enhance a presumptive sentence for an abuse of discretion. *Id.* The trial court must articulate the reasons for deviating from the presumptive sentence. *Jones v. State*, 698 N.E.2d 289, 290 (Ind.1998). We examine the record to ensure that the trial court explained its reasons for selecting the sentence it imposed when the trial court imposes a sentence other than the presumptive sentence. *Walter*, 727 N.E.2d at 446.

 Indiana Code § 35–38–1–7.1 (Burns Code Ed. Supp.2001) requires the trial court to consider the nature and circumstances of the crime committed in imposing a sentence.[8] Bradley contends that the trial court erred in enhancing the sentence by finding that it was drug related

because, while the root of the conflict between Bradley and Watkins may have been drug related, Bradley was not charged with a drug-related crime. We find this argument unpersuasive. The statute does not require that the trial court consider other crimes with which Bradley was charged, but only the nature and circumstances surrounding the crimes which Bradley committed. In this case, there was significant evidence showing that both Bradley and Watkins were involved in drug dealing and that the dispute which led to the shooting was "territory" related. This is significant evidence to show that the nature and circumstances surrounding the crime were drug related. Therefore, the trial court did not err in enhancing the sentence by five years for being drug related. *See Fredrick v. State*, 755 N.E.2d 1078 (Ind.2001) (holding that the trial court properly considered the defendant's drug dealing as an aggravating circumstance after defendant was convicted of murder for killing a police informant).

 Bradley also asserts that the trial court erred by enhancing his sentence for five years because a handgun was intentionally used in the commission of the crime. Bradley specifically asserts that the trial court was not allowed to enhance the sentence based upon the use of a handgun because the State had not filed a written request for the enhancement as required by Indiana Code § 35–50–2–11 (Burns Code Ed. Supp.2001). The State concedes that argument and points to a

---

8. The context of this requirement is not the same as the context in which appellate authority to review and revise sentences exists only if the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Thus we may consider the "nature of the offense" in determining whether to revise the sentence imposed, as an indicator of a policy preference

for imposition of the presumptive sentence. *See Hildebrandt v. State*, No. 82A01–0108–CR–311, 770 N.E.2d 355 (Ind.Ct.App. June 7, 2002). This fact, however, does not preclude a trial court from enhancing a presumptive sentence in light of circumstances surrounding the defendant's commission of each essential element of the statutory offense, or the manner in which that offense was committed.

further ground which invalidates the five-year enhancement for the use of the handgun.

 The State correctly notes that voluntary manslaughter is defined as a Class B felony, but becomes a Class A felony if committed by means of a deadly weapon. I.C. § 35–42–1–3. The State also correctly notes that a fact which constitutes a material element of a crime may not be used as an aggravating factor to support an enhanced sentence. *Borton v. State,* 759 N.E.2d 641, 648 (Ind.Ct.App.2001), *trans. denied.* Accordingly, the trial court improperly enhanced Bradley's sentence on the conviction for voluntary manslaughter by five years.

### Conclusion

We affirm the trial court except upon the five-year sentence enhancement in which the court relied upon Bradley's use of a handgun in the commission of the crime. We remand to the trial court and order that Bradley's sentence for voluntary manslaughter be reduced to 40 years.

KIRSCH, J., and ROBB, J., concur.