**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 27 2014, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RYAN P. DILLON**
Dillon Legal Group, P.C.
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID E. MATNEY, )
)
    Appellant-Defendant, )
)
          vs. )    No. 55A01-1308-CR-372
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Christopher L. Burnham, Judge
Cause No. 55D02-1209-FD-1316

**February 27, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

This case illustrates the importance of making a contemporaneous objection at trial to the admission of evidence and the limited circumstances in which the doctrine of "incredible dubiosity" is applied. Appellant-defendant David E. Matney brings this appeal following his conviction for Auto Theft,[1] a class D felony.

Matney argues that the trial court committed fundamental error in not excluding the testimony of his co-defendant who had pleaded guilty to the offense because it unfairly prejudiced him. Matney further claims that his conviction must be set aside because one of the witness' testimony was inherently improbable, speculative, and unbelievable.

Concluding that the evidence was sufficient to support Matney's conviction and that the trial court did not commit fundamental error, we affirm the judgment of the trial court.

FACTS

Richard Jones, the owner of a used car business in Morgan County, purchased a red Ford Mustang in May 2012 that he later advertised for sale online. On August 8, 2012, at approximately 6:00 p.m., two men—who were later identified as Matney and Tyler Greeson—approached Jones as he was leaving the car lot. Jones spoke with one of the men who told Jones that he had $500 and wanted to buy a vehicle. However, Jones informed Matney and Greeson that the business was closed for the day and told them to return the next day.

---

[1] Ind. Code § 35-43-4-2/5(b)(1).

2

The following day, Jones noticed that the Mustang was missing from the lot. After Jones contacted the police, he viewed the surveillance videotape of the premises and saw footage of Matney driving the Mustang off the lot.

Detective Bradley Yarnell of the Mooresville Police Department reviewed the tape and took several still shots of the suspects that he posted on a Facebook page under the title "Mooresville Police Department Crime Tips." Tr. p. 209-10. After viewing the Facebook page, Heather Adams recognized Greeson as one of the suspects and contacted Crimestoppers. Adams—who knew both Greeson and Matney—later received a photograph on her cell phone showing Matney in the driver's seat of a red Ford Mustang with his girlfriend and her children sitting in the backseat.

When Adams contacted Matney, he told her that he had made a key to the Mustang during a prior test drive and admitted that he drove the car off the lot the night it was stolen. During the investigation, Detective Yarnell also spoke with Adams, who identified the suspects as Greeson and Matney. Detective Yarnell eventually spoke to Greeson who told the detective that he walked to the car lot with Matney, who was carrying a key with a white tag that said "Mustang Cobra." Tr. p. 331.

Based on this information, on September 6, 2012, the State charged Matney with auto theft. Greeson was also charged in the incident, and he subsequently pleaded guilty to the charge. Matney sought to exclude Greeson's trial testimony because he was not able to depose Greeson prior to trial. Matney's counsel claimed that he scheduled Greeson's deposition after Greeson had already pleaded guilty. However, the State

3

subsequently filed a probation violation that resulted in Greeson's return to jail. Matney's counsel informed the trial court that when he arrived at the jail to depose Greeson, he was told that Greeson's attorney instructed Greeson to invoke his Fifth Amendment privileges and refuse to testify. Greeson's counsel informed Matney's attorney that future attempts to depose Greeson would be futile in light of his advice not to testify.

The trial court denied Matney's motion to exclude Gleeson's testimony and the case proceeded to trial. Greeson was granted immunity in exchange for his testimony against Matney. Greeson, Adams, and other witnesses testified. Greeson's trial testimony was equivocal and did not identify Matney as the driver of the vehicle. In fact, Greeson testified that he could not remember who went with him to the car lot on the day of the theft. Matney did not object to Greeson's testimony. Matney was found guilty as charged and was subsequently sentenced to 1060 days of incarceration with credit for 339 days served. Matney now appeals.

## DISCUSSION AND DECISION

### I. Exclusion of Testimony

Matney argues that the trial court committed fundamental error in denying his motion to exclude Greeson's trial testimony. Specifically, Matney contends that the testimony should have been excluded because "Greeson's testimony afforded the State the opportunity to introduce extrinsic evidence of prior inconsistent statements made by the witness." Appellant's Br. p. 5. Moreover, Matney maintains that his inability to

4

depose Greeson prior to his testimony at the jury trial constitutes a violation of basic principles and a denial of his fundamental due process.

In general, the admission or exclusion of evidence is within the trial court's discretion, and we review those decisions only for an abuse of discretion. Jones v. State, 780 N.E.2d 373, 376 (Ind. 2002). The trial court's determination of violations and sanctions will be affirmed absent clear error and resulting prejudice. Bradley v. State, 770 N.E.2d 382, 387 (Ind. Ct. App. 2002).

At the outset, we note that Matney did not object to Greeson's trial testimony. Thus, the issue is waived. See Delarosa v. State, 938 N.E.2d 690, 694 (Ind. 2010) (holding that the failure to make a contemporaneous objection to the admission of evidence results in waiver of any claim of error based upon that evidence). However, in an effort to avoid waiver, Matney contends that the admission of Greeson's testimony constituted fundamental error.

To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. Brown v. State, 799 N.E.2d 1064, 1067 (Ind. 2003). Application of the fundamental error doctrine is extremely narrow, and is applied only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. McQueen v. State, 862 N.E.2d 1237, 1241 (Ind. Ct. App. 2007).

The sanction of witness exclusion should not be employed unless the breach has been purposeful or intentional or unless substantial and irreparable prejudice would result

to the opposing party. <u>Wiseheart v. State</u>, 491 N.E.2d 985, 991 (Ind. 1986). Our Supreme Court has set forth several factors that are helpful in determining whether a witness should be excluded:

> (i)When the parties first knew of the witness; (ii) the importance of the witness's testimony; (iii) the prejudice resulting to the opposing party; (iv) the appropriateness of lesser remedies such as continuances; and (v) whether the opposing party would be unduly surprised and prejudiced by the inclusion of the witness's testimony.

<u>Williams v. State</u>, 714 N.E.2d 644, 651 n.5 (Ind. 1999).

When examining these factors in this instance, we cannot say that the trial court's denial of Matney's motion to exclude Greeson's testimony was unduly prejudicial to Matney. For instance, Matney has not alleged that the State violated any pre-trial discovery orders or belatedly disclosed Greeson as a witness. Both parties knew of Greeson from the time that the charges were filed against Matney. Additionally, Greeson's name was included in the probable cause affidavit that the State filed on the same date of the charging information. Appellant's App. p. 2, 111-12. However, after Matney's counsel scheduled Greeson's deposition, Greeson invoked his Fifth Amendment rights on the advice of his counsel and refused to be deposed. <u>Id.</u> at 31-32. Matney directs us to no authority—and we have found none—in support of his position that a witness who invokes his Fifth Amendment privilege against self-incrimination at a deposition may later be excluded as a witness on that basis at trial.

Matney also does not assert that the State acted in bad faith. In our view, the State did not engage in the type of intentional or purposeful behavior that would justify the

6

extreme sanction of exclusion. Indeed, Greeson's decision to invoke his Fifth Amendment privilege at his deposition was not within the State's control. In Matney's written motion to exclude Greeson's testimony, his counsel noted that he made arrangements with the State to tentatively reschedule Greeson's deposition, but Greeson's counsel indicated that he had advised Greeson not to testify at either a deposition or trial and that he would continue to advise Greeson of the same.

We also note that the exclusion of Greeson's testimony was not compelled by a showing of substantial prejudice. Pursuant to the trial court's discovery order, the State provided Matney's attorney with a DVD of Greeson's statement before trial. Thus, defense counsel was apprised of Greeson's expected testimony well in advance of trial. Further, defense counsel may have been able to informally interview Greeson in the presence of his counsel before the trial began. Hence, he could investigate at least some aspects of Greeson's version of the events. Tr. p. 32.

Finally, while Greeson appeared to be an important witness based upon statements that he made to Detective Yarnell identifying Matney as the driver of the vehicle during the commission of the theft, Greeson recanted those statements at trial and refused to identify Matney as the individual who accompanied him to the car lot on the day of the auto theft or as the driver of the vehicle during commission of the crime. Appellant's App. p. 111-12; Tr. p. 160, 169, 171-72. In short, the State received no benefit from providing use immunity to Greeson at trial, even though Detective Yarnell responded in the negative when the State asked if Greeson was "consistent about … his testimony

7

today and what he told you then regarding his drug use, where they went after leaving Valley Motors, and his inability to recall who was with him" when the theft occurred. Tr. p. 220. If anything, that testimony benefited Matney because Greeson testified that he could not remember who accompanied him to the car lot or who drove the car away.

Under these facts, the "most extreme sanction" of witness exclusion was not warranted because Matney failed to demonstrate substantial and irreparable prejudice when the trial court denied his motion to exclude Greeson's testimony. As a result, Matney's claim of fundamental error fails.

## II. Sufficiency of the Evidence

Matney next claims that the evidence was insufficient to support his conviction. Specifically, Matney maintains that the testimony of one of the witnesses, Heather Adams, is "ripe with characteristics that invoke the doctrine of incredible dubiosity." Appellant's Br. p. 5. As a result, Matney maintains that his conviction must be set aside.

When a defendant challenges the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. We consider only the probative evidence and reasonable inferences drawn therefrom that support the finding of guilt. We likewise consider conflicting inferences in the light most favorable to the conviction. We will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime proven beyond a reasonable doubt. Neese v. State, 994 N.E.2d 336, 339 (Ind. Ct. App. 2013).

In challenging the sufficiency of the evidence, Matney invokes the rule of incredible dubiosity. As explained by our Supreme Court

> Within the narrow limits of the "incredible dubiosity" rule, a court may impinge upon a jury's function to judge the credibility of a witness. If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Love v. State, 761 N.E.2d 806, 810 (Ind. 2002) (emphasis added). In addition, inconsistencies between the testimonies of multiple witnesses do not make the evidence "incredible" as a matter of law, and only go to the weight of the evidence. Morell v. State, 933 N.E.2d 484, 492-93 (Ind. Ct. App. 2010).

The crime of auto theft is committed when a person knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with intent to deprive the owner of the vehicle's use or value or a component part . . . of the vehicle. Ind. Code § 35-43-4-2.5(b). The State's charging information alleged as follows:

> [O]n or about August 8, 2012 in Morgan County, . . . [Defendant] did knowingly exert unauthorized control over the motor vehicle of Valley Motors Auto Sales, to-wit: 1995 Ford Mustang; with the intent to deprive Valley Motors of the vehicle's value or use thereof.

Appellant's App. p. 110.

As discussed above, the evidence established that Jones purchased the red Mustang in May 2012 that he subsequently advertised for sale. Tr. p. 122-24. Around

9

6:00 p.m. on August 8, 2012 two men—Matney and Greeson—approached, indicating that they wanted to purchase a vehicle. After Jones explained that the business was closed, he asked them to return the following day. Jones noticed the next day that the Mustang was missing. After contacting the police, Jones watched a surveillance tape of the lot and saw footage showing the two men he spoke with the previous evening enter the Mustang and drive it off of the lot. Tr. p. 129. Jones later identified Greeson as one of two men who stole the vehicle.

Following the theft, Adams received a photo showing Matney driving a Mustang that she later identified was similar to the car that was stolen from the lot. Id. at 183, 191. Matney admitted to Adams that he made a copy of the key to the Mustang during a test drive of the car and that he drove the car off the lot the night that it was stolen. At trial, Adams identified Matney as the other individual in the surveillance videotape on the date that the Mustang was stolen from Jones's lot. Id. at 200-01.

In this case, Matney has failed to show that Adams's testimony was inherently improbable, unbelievable, of an incredibly dubious nature, or "riddled with doubt about its trustworthiness." Feyka v. State, 972 N.E.2d 387, 392 (Ind. Ct. App. 2012). And there is no showing that Adams's testimony was equivocal, coerced, or contradictory. Adams never wavered from her account of events and her testimony was not inconsistent. Rather, her testimony was descriptive and clear.

We also note that Adams's testimony was not wholly uncorroborated. Even though Greeson recanted his previous statements at trial, Detective Yarnell testified that

10

Greeson admitted that he and Matney walked over to the car lot together, and that Matney had a copy of the key with a white tag that said "Mustang Cobra." Tr. p. 231. This information corroborated Adams's testimony that Matney informed her that he made a copy of the key to the Mustang during a prior test drive of the vehicle. Id. at 194. Greeson also admitted at trial that he was with Matney earlier in the day when the vehicle was stolen from the lot. Id. at 159-60.

In sum, Adams's testimony does not fall within the narrow confines of testimony that has been found to be incredibly dubious by this Court. Adams was not equivocal about her identification of Matney in the surveillance videotape or her conversation with Matney to the extent that her testimony could be considered "riddled with doubt about its trustworthiness." Feyka, 972 N.E.2d at 392. For all of these reasons, the incredible dubiosity rule does not apply here. Thus, Matney's claim fails, and we conclude that the evidence was sufficient to support Matney's conviction.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.