Jimmie L. WOODLEY and Allstate Insurance Company, Appellants–Defendants,

v.

Ted K. FIELDS and Rosella M. Fields, Appellees–Plaintiffs.

No. 45A05–0308–CV–397.

Court of Appeals of Indiana.

Dec. 15, 2004.

Rehearing Denied Feb. 22, 2005.

---

Patrick J. Dietrick, Collingnon & Dietrick, Indianapolis, IN, Ronald D. Getchey, Luce Forward Hamilton & Scripps, San Diego, CA, Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale, Indianapolis, IN, Attorneys for Appellants.

Kenneth J. Allen, David W. Conover, Michael T. Terwilliger, Valparaiso, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

Allstate Insurance Company ("Allstate") appeals the trial court's orders: (1) denying Allstate's motion for relief from default judgment; (2) denying Allstate's motion for partial summary judgment; (3) denying Allstate's motion to enforce a settlement agreement; and (4) granting Ted Fields ("Fields") and Rosella Fields's (collectively, "the Fieldses") motion in limine. We find the following two issues dispositive to the resolution of this case:

I. Whether we have jurisdiction over the trial court's interlocutory orders: (1) denying Allstate's motion for partial summary judgment; (2) denying Allstate's motion to enforce a settlement agreement; and (3) granting the Fieldses' motion in limine; and

II. Whether the trial court erred by denying Allstate's motion for partial summary judgment on the Fieldses' bad faith claim against Allstate.[1]

We reverse and remand.[2]

The relevant facts follow. On September 1, 1995, Fields was injured when he was involved in an automobile accident with Jimmie Woodley. At the time of the accident, Woodley was insured by Coronet

---

1. Because our holding that the trial court erroneously denied Allstate's motion for partial summary judgment is dispositive to the resolution of this case, *see .infra*, we do not reach the merits of issues relating to the default judgment, settlement agreement, or motion in limine.

2. Allstate filed a motion for oral argument, and we hereby deny that motion. Allstate also filed a motion to strike the Fieldses' addendum. Because the Fieldses' addendum contains two documents relating to the default judgment issue and because we will not address the merits of that issue, we hereby deny Allstate's motion to strike. In addition, the Fieldses filed a motion to strike a portion of Allstate's reply brief, and we also deny that motion.

Insurance Group ("Coronet"), and Fields was insured by Allstate. Fields's policy with Allstate contained the following coverage limits: (1) medical payments of $1,000 for each person; (2) uninsured motorist property damage ("UMPD") of $10,000 for each accident; and (3) uninsured motorist bodily injury ("UMBI") of $50,000 for each person and $100,000 for each accident. In October · 1995, the Fieldses filed a lawsuit against Woodley, alleging a negligence claim and a loss of consortium claim. In November 1995, Fields submitted a list of medical bills to Allstate for payment under his medical payments provision of his policy, and Allstate paid the $1,000 medical coverage limits of his policy.

Coronet went into liquidation, and in January 1997, Fields notified Allstate that he was pursuing an uninsured motorist claim because of Coronet's liquidation. A few days later, Allstate responded and acknowledged Fields's intent to claim uninsured motorist coverage. In the letter, Allstate enclosed "standard medical/wage authorization forms and Proof of Loss forms" for Fields to complete and return "per the policy contract." Appellant's Appendix at 114.

On January 30, 1997, Fields sent Allstate a letter demanding the policy limits of his uninsured motorist coverage. Fields enclosed some narrative reports and a list of medical specials and wage loss information totaling approximately $25,000 but stated that the submission was "incomplete." *Id.* at 379. On February 4, 1997, Allstate responded to Fields and stated that Allstate's adjuster was "in the process of reviewing the materials presented and [would] address [Fields's] policy limits de-

mands in the very near future." *Id.* at 381. Allstate enclosed another set of medical and wage authorizations and proof of loss forms and stated that "[p]er the policy contract, no offers of settlement [would] be made until [Fields] compl[ied] with the policy." *Id.* On February 20, 1997, Fields sent Allstate a letter, notified Allstate that he had sustained property damage that exceeded $4,500, and enclosed completed medical and wage authorizations.[3] Fields stated that Allstate's requests for a proof of loss form and the medical and wage authorizations were a violation of Allstate's "duty of good faith and fair dealing." *Id.* at 382. In the letter, Fields further stated that Allstate's "continued failure or refusal to pay the applicable [uninsured motorist] policy limits is unreasonable, inequitable and in bad faith" and that if Allstate did not tender the policy limits within ten days, he would "litigate the issue of [Allstate's] bad faith refusal to pay[.]" *Id.* at 383.

On February 27, 1997, Allstate responded to Fields's letter, and stated that it did "not desire to delay in the handling of this claim" and that the information requested would assist it in evaluating Fields's claim. *Id.* at 384. Allstate sought photos and repair estimates for Fields's property damage and stated that it had just received Fields's medical and wage loss authorizations and would begin to gather such information to evaluate his claim. Allstate also enclosed another proof of loss form and informed Fields that the completion of the form was required by his policy and that no offers of settlement would be made unless he complied with the policy contract. Also in February 1997, Allstate filed a petition to intervene in the Fieldses'

---

3. In his letter, Fields stated that he was enclosing "the forms" that Allstate requested. Appellant's Appendix at 382. However, in Allstate's reply letter, it stated that it only received the medical and wage authorizations.

lawsuit against Woodley.[4]

In March 1997, the Fieldses moved for leave to file an amended complaint, added Allstate as a party defendant, and alleged a bad faith claim against Allstate, and Allstate filed its answer to the Fieldses' first amended complaint in May 1997.[5] Thereafter, the Fieldses and Allstate engaged in discovery, which resulted in the Fieldses filing a motion to compel Allstate to respond to interrogatories and requests for production regarding the bad faith claim and Allstate filing a request for a protective order. The trial court granted the Fieldses' motion to compel in part and Allstate's motion for protective order in part.[6]

In March 1998, Allstate filed a motion for partial summary judgment on the bad faith claim, arguing that there was no evidence that Allstate knowingly denied Fields's claim in bad faith. The Fieldses moved to extend their time to respond to Allstate's partial summary judgment motion and sent a deposition notice to Allstate, requesting Allstate to have someone appear who could testify to all matters set out in the Fieldses' interrogatories and requests for production and who could bring to the deposition all documents previously requested in the interrogatories and requests for production. Allstate sent the Fieldses an objection to the deposition and failed to appear at the scheduled deposition.

In August 1998, the Fieldses filed a motion for default based on Allstate's failure to appear at the deposition, which the trial court construed as a motion for extension of time to respond to Allstate's motion for partial summary judgment, and the trial court granted the Fieldses an "indefinite enlargement of time to respond ... until such time as the deposition of Allstate's designated representative was completed." *Id.* at 456.

In October 1998, Allstate appeared for its deposition and refused to answer questions about its claim practices and procedures. Thereafter, the Fieldses filed a second motion for default and certified the twenty-one unanswered deposition questions to the trial court. Allstate then filed a second motion for protective order. After holding a hearing on the Fieldses' second motion for default and Allstate's second motion for protective order, the trial court issued an order denying the Fieldses' motion for default and Allstate's second motion for protective order. The trial court ordered Allstate to "give full and complete answers" to the certified deposition questions and stated that Allstate's "intransigence in complying with [the Fieldses'] discovery requests may very well become [the Fieldses'] prima facie

---

4. In its petition to intervene, Allstate alleged that Woodley was not the driver of an "uninsured automobile" and was not negligent and that Fields caused or contributed to the auto accident and did not comply with the terms and conditions of his policy with Allstate.

5. In January 1998, nine months after Allstate had already filed its answer to the Fieldses' first amended complaint, Allstate filed an objection to the Fieldses' motion to amend their complaint. In March 1998, the trial court granted the Fieldses leave to amend their complaint.

6. In regard to granting the Fieldses' motion, the trial court ordered Allstate to "provide complete and non-evasive answers" to four specific interrogatories. Appellant's Appendix at 168. In regard to granting Allstate's motion, the trial court ruled that all other interrogatories and requests for productions would be protected. The trial court's order also provided that "[the Fieldses'] discovery requests may be reconsidered in the future in the event [the Fieldses] show a factual basis connected to their claim for their allegations of bad faith on the part of [Allstate]." *Id.* at 169.

showing of bad faith on the part of [Allstate]." *Id.* Thereafter, Allstate moved the trial court to reconsider its denial of Allstate's motion for protective order, or in the alternative, to certify its order denying Allstate's motion, and the trial court denied the motion.

From January 1999 to August 1999, Allstate and Fields engaged in discussions regarding settlement of the UMBI claim, wherein Allstate offered Fields the $50,000 limits of the uninsured motorist policy to settle the UMBI claim. There was a dispute over the language of the settlement agreement, and a settlement agreement was never signed. In October 1999, Allstate filed a motion to enforce the settlement agreement, and the trial court denied Allstate's motion.

In May 2000, the Fieldses then filed a third motion for default and alleged that Allstate refused to answer the thirteen deposition questions during a December 1999 deposition. The trial court denied the Fieldses' third motion for default. The Fieldses then filed an amended third motion for default, which the trial court denied. However, the trial court later ordered Allstate to answer the deposition questions, and the parties eventually completed the deposition of Allstate.

In February 2001, the Fieldses responded to Allstate's motion for partial summary judgment, arguing that the manner in which Allstate handled and processed Fields's claim constituted bad faith. Allstate filed a motion to strike the Fieldses' response to its partial summary judgment motion as untimely and to strike some of the Fieldses' designated evidence as inadmissible. The trial court held a hearing on Allstate's motion for partial summary judgment[7] and denied the motion on March 21, 2001. On April 16, 2001, the trial court also denied Allstate's motion to strike. On May 30, 2001, Allstate petitioned the trial court to certify its denial of Allstate's motion for partial summary judgment and its denial of Allstate's motion to strike, and the trial court denied Allstate's petition for certification of the interlocutory orders.

In January 2002, Allstate filed a motion to deposit the policy limit proceeds of $50,000 for the UMBI claim with the trial court clerk "for preservation pending the outcome of trial," and the Fieldses objected to Allstate's motion.[8] *Id.* at 479. On May 10, 2002, the trial court ordered Allstate to submit a confession of judgment by June 14, 2002.[9] On June 17, 2002, Allstate filed a confession of partial judgment ("confession"). The Fieldses then objected to Allstate's confession, arguing that the confession did not comply with Ind.Code § 34–54–2–3 because Allstate did not file an affidavit as required by that statute.[10] The Fieldses also moved to

---

**7.** A transcript of the partial summary judgment hearing was not requested for this appeal.

**8.** The chronological case summary shows that the Fieldses also filed a motion to strike; however, that motion is not contained in the appendices.

**9.** The trial court issued this order after holding a hearing on Allstate's motion for default against the Fieldses for failing to comply with a trial court order to answer interrogatories and on the Fieldses' motion to strike.

**10.** Ind.Code § 34–54–2–3 (1998) provides:

> Whenever a confession of judgment is made by power of attorney or otherwise, the party confessing shall, at the time the party confessing executes the power of attorney or confesses judgment, make affidavit stating that:
> (1) the debt is just and owing; and
> (2) the confession is not made for the purpose of defrauding the person's creditors.
> The affidavit shall be filed with the court.

strike the first ten paragraphs of Allstate's confession because they were "unsubstantiated, argumentative, largely hearsay assertions by Allstate" in which Allstate sought "to justify [its] wrongful conduct in this case." *Id.* at 546. On July 1, 2002, the trial court granted the Fieldses' motion to strike paragraphs one through ten of Allstate's confession and ordered Allstate to file the requisite Ind.Code § 34–54–2–3 affidavit. The trial court did not specify the date by which Allstate was required to file the statutory affidavit.

On December 24, 2002, the Fieldses filed a fourth motion for default based on Allstate's failure to comply with the trial court's July 1, 2002 order to file a statutory affidavit with its confession of judgment and based on Allstate's "persistent refusal" to comply with trial court orders. *Id.* at 554. The Fieldses sought to have the trial court enter default against Allstate on the issue of its liability on the bad faith claim and to set the matter for a trial on damages. On January 6, 2003, the trial court ordered Allstate to file objections to the Fieldses' fourth motion for default within fourteen days.

On January 30, 2003, the Fieldses filed a motion for summary ruling on its fourth motion for default, arguing that the trial court should enter an order finding Allstate in default for its refusal to comply with the trial court's orders.[11] On February 1, 2003, Allstate faxed the trial court an objection to the Fieldses' motion for summary ruling on the fourth motion for default and sought an extension of time until February 7, 2003, within which to respond to the Fieldses' fourth motion for default.

On February 3, 2003, the trial court, without holding a hearing, granted the Fieldses' motion for summary ruling on its fourth default motion and entered default against Allstate on the bad faith claim. In its order, the trial court stated that "[t]he [Fieldses] filed a proposed Order granting said Motion [for summary ruling on fourth motion for default] for the Court's consideration on January 30, 2003 which the Court hereby grants."[12] *Id.* at 578 (emphasis in original). Allstate then filed an objection to the Fieldses' fourth motion for default and a request for an extension of time to obtain declarations and to submit a final response, and the trial court denied Allstate's objection and request for time as untimely.

The trial court set the trial on damages for August 23, 2003. The parties filed their witness and exhibit lists and pre-trial contentions, and in its contentions, Allstate argued that there was no bad faith on its part. The Fieldses filed a motion in limine seeking to preclude Allstate from arguing or presenting evidence that it was not liable for actual or punitive damages or that it acted "with anything other than dishonest purpose, moral obliquity, furtive

---

11. The Fieldses also filed a proposed order that provided as follows:

    1. [The Fieldses'] Motion should be and is hereby GRANTED.

    2. Allstate is hereby DEFAULTED for its refusal to comply with this Court's July 1, 2002 Order regarding its confession of judgment and for its failure to comply with this Court's January 6, 2003 Order granting Allstate fourteen days within which to object to the [Fieldses'] Fourth Motion for Default.

    3. Allstate shall not be permitted to offer any defenses whatsoever regarding its liability for the claims made in the [Fieldses'] Complaint. Instead, this matter is hereby ORDERED to trial solely on the issues of damages on the ___ day of _____, 2003, beginning at ___ a.m./p.m.

    Appellant's Appendix at 570 (blanks contained in original).

12. "OPF" means "order per form." Appellant's Brief at 6 n. 3.

design, and/or ill will." *Id.* at 820–821. In their motion, the Fieldses argued that the default against Allstate operated as a "confession of the complaint." *Id.* at 824. The trial court granted the Fieldses' motion in limine.

In July 2003, Allstate filed a motion for relief from the trial court's February 3, 2003 order of default under Ind. Trial Rule 60(B).[13] After holding a hearing, the trial court denied Allstate's motion for relief from the order of default on July 28, 2003.

On August 4, 2003, Allstate filed its notice of appeal regarding the trial court's order denying Allstate's motion for relief from order of default. When Allstate filed its appellate brief, it challenged some interlocutory orders from the trial court in addition to the trial court's order denying Allstate's relief from the order of default. The Fieldses then filed a motion to strike and for partial dismissal of appeal, arguing that Allstate's appeal should be dismissed in part because this court lacked jurisdiction of the interlocutory orders that were not made final pursuant to Ind. Trial Rule 54(B) and were not certified by the trial court nor accepted by this court under Ind. Appellate Rule 14(B) for immediate appellate review. Specifically, the Fieldses argued that we should dismiss Allstate's attempt to appeal the trial court's interlocutory orders: (1) denying Allstate's motion for partial summary judgment; (2) denying Allstate's motion to enforce settlement;

and (3) granting the Fieldses' motion in limine.

On February 23, 2004, we issued an order denying the Fieldses' motion to strike and for partial dismissal of appeal. Our order provided that the Fieldses were "correct that the only issue ripe for appeal is the trial court's July 28th denial of Allstate's motion for relief from the entry of default" but that "Ind. Appellate Rule 66(B)[ [14]] gives this Court discretion in determining whether or not an appeal should be dismissed as of right because the case was not finally disposed of in the trial court." February 23, 2004 Order at 1–2. The order further provided that "the issues raised by the trial court's interlocutory orders are intertwined with the issues raised by the denial of the motion for relief from the entry of default" and we, therefore, invoked our discretion under App. R. 66(B) and stated we would address all of Allstate's issues raised on appeal. *Id.* at 2.

### I.

The first issue is whether we have jurisdiction over the trial court's interlocutory orders: (1) denying Allstate's motion for partial summary judgment; (2) denying Allstate's motion to enforce settlement; and (3) granting the Fieldses' motion in limine. In their appellees' brief, the Fieldses renewed their argument that this court does not have jurisdiction over the above interlocutory orders. The Fieldses argue that our acceptance of appellate ju-

---

**13.** A few days after Allstate filed its motion for relief from the order of default, it filed the statutory affidavit in response to the trial court's July 2002.

**14.** Ind. Appellate Rule 66(B) provides:
No appeal shall be dismissed as of right because the case was not finally disposed of in the trial court ... as to all issues and parties, but upon suggestion or discovery of such a situation, the Court may, in its discretion, suspend consideration until dispo-

sition is made of such issues, or it may pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by subsequent proceedings in the trial court[.]
Prior to January 1, 2001, when our supreme court amended the Indiana Appellate Rules, Ind. Appellate Rule 66(B) was found in substantially the same form under Ind. Appellate Rule 4(E).

risdiction over the interlocutory orders pursuant to App. R. 66(B) conflicts with our holding in *Allstate Ins. Co. v. Scroghan*, 801 N.E.2d 191, 195–196 (Ind.Ct. App.2004), *trans. denied,* and therefore, we should reconsider our previous order to exercise jurisdiction under App. R. 66(B) over these interlocutory orders.

In *Scroghan,* the insured filed a breach of contract claim and a bad faith claim against his insurer, Allstate, for failing to pay him the uninsured motorist bodily injury policy limits. *Id.* at 192. The insured served Allstate with a request for production of documents seeking all documents relating to bad faith claims against Allstate. *Id.* Allstate objected to the request, the insured filed a motion to compel, and Allstate filed a request for a protective order. *Id.* After the trial court partially granted the insured's motion to compel, Allstate filed a motion to reconsider, and the trial court denied Allstate's motion. *Id.* Allstate sought certification for an interlocutory appeal pursuant to Ind. Appellate Rule 14(B), and the trial court denied Allstate's request for certification. *Id.*

Allstate appealed and, in addressing our jurisdiction to hear its appeal, argued that it properly appealed the discovery order as an interlocutory appeal of right under Ind. Appellate Rule 14(A). *Id.* In the alternative, Allstate argued that if we did not have jurisdiction under App. R. 14(A), we should exercise our discretion to hear this appeal under App. R. 66(B). *Id.*

We first held that Allstate's appeal was not an interlocutory appeal of right under App. R. 14(A), a discretionary interlocutory appeal under App. R. 14(B) because the trial court had denied certification, or a statutory interlocutory appeal under App. R. 14(C). *Id.* at 194–195. We then acknowledged that we have previously decided cases that suggest that under App. R. 66(B) we may find jurisdiction to hear an interlocutory appeal outside of App. R. 14. *Id.* at 195 (citing *Nass v. State ex rel. Unity Team,* 718 N.E.2d 757, 762 (Ind.Ct. App.1999), *reh'g denied, trans. denied; Northwestern Mut. Life Ins. Co. v. Stinnett,* 698 N.E.2d 339, 341 (Ind.Ct.App. 1998)). However, we stated that we preferred the reasoning of *INB Nat'l Bank v. 1st Source Bank,* 567 N.E.2d 1200 (Ind.Ct. App.1991), in which we determined that:

> [Rule 66(B) ] should not be interpreted as an alternative authorization to litigants to initiate interlocutory appeals apart from, or in addition to, the authorization provided by [Rule 14]. In addition, we believe it would constitute an abuse of discretion for this court to grant an interlocutory appeal cognizable under [Rule 14(B) ] where the trial court, as here, has expressly refused or denied certification.

*Scroghan,* 801 N.E.2d at 195–196 (brackets in original) (quoting *INB,* 567 N.E.2d at 1202). We further stated that "[i]f we were to allow the use of Rule 66(B) to supplement our jurisdiction to hear interlocutory appeals under Rule 14, then the limitations of Rule 14 would become meaningless." *Scroghan,* 801 N.E.2d at 196. Therefore, we refused to exercise our discretion to hear the appeal under App. R. 66(B) and dismissed the appeal. *Id.*

We find *Scroghan* distinguishable from this case. In *Scroghan,* Allstate was attempting to appeal from a freestanding interlocutory order, i.e., the trial court's granting of a motion to compel, and did not also have any final judgment that was otherwise properly before this court on appeal. However, here, Allstate is appealing from a final judgment that is properly before this court, i.e., the appeal from the trial court's denial of Allstate's Ind. Trial Rule 60(B) motion for relief from the order

of default. *See* Ind. Trial Rule 60(C).[15] Although Allstate's appeal of the trial court's interlocutory orders is not an interlocutory appeal of right under App. R. 14(A), a discretionary interlocutory appeal under App. R. 14(B), or a statutory interlocutory appeal under App. R. 14(C), we "have declined to dismiss improperly brought appeals and retained jurisdiction of the appeal under [Ind. Appellate Rule 66(B)] in cases of a significant public interest and where the same issue would be raised in a new appeal." *Northwestern Mut.,* 698 N.E.2d at 341; *see also Nass,* 718 N.E.2d at 762. Here, the interlocutory orders could be raised in a new appeal and are intimately involved in the subject matter of the issue in this appeal, i.e., the denial of Allstate's motion for relief from the order of default. Furthermore, both parties have briefed the interlocutory issues, and it would be impracticable and a waste of judicial resources not to review these interlocutory orders on appeal, especially where one of them is dispositive of the default issue on appeal. Therefore, we

choose to follow the line of cases in which we have exercised our discretion and found jurisdiction to hear an interlocutory appeal outside of App. R. 14. *See, e.g., Nass,* 718 N.E.2d at 762; *Northwestern Mut.,* 698 N.E.2d at 341. Accordingly, we again deny the Fieldses' motion for partial dismissal of Allstate's appeal.[16]

## II.

The next issue is whether the trial court erred by denying Allstate's motion for partial summary judgment on the Fieldses' bad faith claim against Allstate. Our standard of review for the grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 973 (Ind. 2001). The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact and

15. Ind. Trial Rule 60(C) provides that "[a] ruling or order of the court denying or granting relief, in whole or in part, by motion under subdivision (B) of this rule [i.e., motion for relief from judgment or order] shall be deemed a final judgment, and an appeal may be taken therefrom as in the case of a judgment...."

16. Allstate argues that the interlocutory orders are ripe for review under Ind. Trial Rule 60(C), which provides that "[a] ruling or order of the court denying or granting relief, in whole or in part, by motion under subdivision (B) of this rule shall be deemed a final judgment, and an appeal may be taken therefrom as in the case of a judgment...." Ind. Trial Rule 60(B) provides, in part, that "[o]n motion and upon such terms as are just[,] the court may relieve a party ... from an entry of default, final order, or final judgment, including a judgment by default" for specified reasons, including: "(1) mistake, surprise, or excusable neglect ... (3) fraud, misrepresen-

tation, or other misconduct of an adverse party ... or (8) any reason justifying relief from the operation of the judgment[.]" Allstate argues that T.R. 60(C) not only deemed the denial of its T.R. 60(B) motion for relief from the default order to be a final judgment available for appeal but that T.R. 60(C) also rendered the interlocutory orders reviewable on appeal. We disagree.

Ind. Trial Rule 60(C) states that the specific order denying or granting a motion for relief from an order of default under T.R. 60(B) will be deemed a final judgment available for appeal; it does not state that any interlocutory order will also be deemed to be a final judgment. Ind. Trial Rule 60(C) does not allow an appellant to bootstrap otherwise inappropriately raised interlocutory orders to an order that has been deemed a final judgment by operation of the rule. Although we are going to review the interlocutory orders on this appeal, we do so by exercising our discretion to hear the interlocutory orders, and not under T.R. 60(C).

only then is the nonmovant required to come forward with contrary evidence. *Jarboe v. Landmark Cmty. Newspapers of Indiana, Inc.*, 644 N.E.2d 118, 123 (Ind. 1994), *reh'g denied.* All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Mangold*, 756 N.E.2d at 973. Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Id.* at 974.

■ Allstate argues that the trial court erred by denying its motion for partial summary judgment because there was no evidence to support a claim of bad faith against it. Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind.1993). This obligation of good faith and fair dealing includes the obligation to refrain from: (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in payment; (3) deceiving the insured; and (4) exercising an unfair advantage to pressure an insured into settlement of his claim. *Id.* at 519. A cause of action will not arise every time an insurance claim is denied. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind.2002). A good faith dispute about the amount of a valid claim or whether an insured has a valid claim at all will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 310 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* In addition, the

lack of diligent investigation alone is insufficient to support a claim of bad faith. *Erie*, 622 N.E.2d at 520. However, an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. *Freidline*, 774 N.E.2d at 40. To prove bad faith, the plaintiff must establish with clear and convincing evidence that the insurer had knowledge that there was no legitimate basis for denying liability. *Id.* Thus, "[p]oor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present." *Colley v. Ind. Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind.Ct. App.1998), *trans. denied.* "A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Id.*

■ Allstate argues that it was entitled to partial summary judgment as a matter of law because there was no evidence that it acted in bad faith from the time that Fields notified Allstate that he was pursuing an uninsured motorist claim (January 1997) to the time that the Fieldses filed a bad faith claim against Allstate (March 1997). The Fieldses argue that Allstate breached its duty of good faith and fair dealing by engaging in unfounded delay in offering a settlement on the uninsured motorist claims and misrepresentation of facts.[17] The Fieldses argue that we should review Allstate's post-litigation behavior when determining whether Allstate acted in bad faith and that their bad faith claim is supported by reviewing Allstate's behavior from the time Fields notified Allstate that he was pursuing an uninsured motorist claim until the time that Allstate made

17. The Fieldses also argue that Allstate's bad faith can be supported by its violations of certain provisions of Ind.Code § 27–4–1–4.5. However, Ind.Code § 27–4–1–4.5, which specifies certain "unfair claim settlement practices," provides no private cause of action. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 n. 1 (Ind.1993).

an offer of settlement on the uninsured motorist claims.

To support their argument that we should look at Allstate's post-litigation behavior, the Fieldses rely on *Gooch v. State Farm Mut. Auto. Ins. Co.*, 712 N.E.2d 38 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* In *Gooch,* the insured filed an uninsured motorist claim with her insurer, State Farm. *Id.* at 39. After the insured and State Farm were unable to reach a settlement, the insured filed a breach of contract against State Farm. *Id.* Four months later, the insured amended her complaint and alleged that State Farm acted in bad faith. *Id.* State Farm moved for summary judgment on the bad faith claim, and the trial court granted State Farm's motion. *Id.* at 40.

The insured appealed and argued that State Farm breached its duty of good faith by attempting to force her to settle her claim. *Id.* at 40–41. The insured argued that the evidence supporting her claim occurred after she filed her breach of contract claim against State Farm but before she amended the complaint to include the bad faith claim. *Id.* We noted that the question of whether an insurer's post-litigation behavior could be used as evidence of bad faith was an issue of first impression, and we looked at cases from other jurisdictions that focused on the relevance of the post-litigation conduct to the bad faith claim. *Id.* at 41–42. We concluded that "if the incident giving rise to the bad-faith claim is not a claim denial, then 'evidence that arises after the filing of the *bad-faith claim* is not relevant.'" *Id.* at

42 (italics in original) (quoting *Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 450 S.E.2d 582 (1994)). We, therefore, held that the conduct that occurred after the insured filed her lawsuit but before she filed the bad faith claim was relevant to whether State Farm acted in bad faith and that conduct after the bad faith claim was filed was not relevant. *Id.* at 42.

Here, as in *Gooch,* the alleged bad faith is not a claim denial. Therefore, any conduct that occurred after the Fieldses amended their complaint and filed their bad faith claim against Allstate in March 1997 is not relevant and will not be considered.[18] *See id.* When the Fieldses amended their complaint in March 1997, they alleged that Allstate had engaged in conduct constituting bad faith by refusing to settle the uninsured claims with Fields. Thus, it is that conduct that occurred prior to the Fieldses filing the bad faith claim against Allstate that is relevant.

▄ The designated evidence reveals that after Fields was involved in an automobile accident in September 1995, Allstate opened a file for medical payments coverage and paid Fields the $1,000 limits of this coverage by February 1996. On January 9, 1997, Fields notified Allstate that he intended to seek coverage under the uninsured motorist portion of his policy. A few days later, Allstate responded and acknowledged Fields's intent to claim uninsured motorist coverage. In the letter, Allstate enclosed "standard medical/wage authorization forms and Proof of Loss forms" for Fields to complete and

---

**18.** As part of its argument that Allstate breached its duty of good faith, the Fieldses rely on the report of an expert witness, who they contend, "concluded that Allstate's delay and claims practices were unreasonable." Appellee's Brief at 40. We, however, do not find that the expert report establishes a genuine issue of material fact. The majority of the report merely sets forth general information regarding the insurance industry. It references some post-litigation conduct and does not contain any specific assertion that Allstate's behavior from the time it was notified of Fields's uninsured motorist claim to the time of filing the lawsuit was in bad faith.

return "per the policy contract." Appellant's Appendix at 114.

On January 30, 1997, Fields sent Allstate a letter demanding the policy limits of his uninsured motorist coverage. Fields enclosed some narrative reports and a list of medical specials and wage loss information totaling approximately $25,000 but stated that the submission was "incomplete." *Id.* at 379. On February 4, 1997, Allstate responded to Fields and stated that it was "in the process of reviewing the materials presented and [would] address [Fields's] policy limits demands in the very near future." *Id.* at 381. Allstate enclosed another set of medical and wage authorizations and proof of loss forms and stated that "[p]er the policy contract, no offers of settlement [would] be made until [Fields] compl[ied] with the policy." *Id.*

On February 20, 1997, Fields sent Allstate a letter, notified Allstate that he had sustained property damage that exceeded $4,500, and enclosed completed medical and wage authorizations.[19] Fields stated that Allstate's requests for medical and wage authorizations were a violation of Allstate's "duty of good faith and fair dealing." *Id.* at 382. In the letter, Fields further stated that Allstate's "continued failure or refusal to pay the applicable [uninsured motorist] policy limits is unreasonable, inequitable and in bad faith" and that if Allstate did not tender the policy limits within ten days, he would "litigate

the issue of [Allstate's] bad faith refusal to pay[.]" *Id.* at 383.

On February 27, 1997, Allstate responded to Fields's letter, and stated that it did "not desire to delay in the handling of this claim" and that the information requested would assist it in evaluating Fields's claim. *Id.* at 384. Allstate sought photos and repair estimates for Fields's property damage and stated that it had just received Fields's medical and wage loss authorizations and would begin to gather such information to evaluate his claim. Allstate also enclosed another proof of loss form and informed Fields that the completion of the form was required by his policy and that no offers of settlement would be made unless he complied with the policy contract. Also in February 1997, Allstate filed a petition to intervene in the Fieldses' lawsuit against Woodley. On March 14, 1997, the Fieldses moved for leave to file an amended complaint, added Allstate as a party defendant, and alleged a breach of contract and bad faith claim against Allstate.

The Fieldses' contention in support of a finding of bad faith is that Allstate engaged in an unfounded delay in making a payment after Fields demanded payment of his uninsured motorist policy limits. Allstate informed Fields that it could not offer to pay any of the uninsured motorist coverage until he complied with his policy by submitting medical and wage authorizations and a proof of loss form. Between

**19.** In his February 20th letter, Fields stated that he was enclosing "the forms" that Allstate requested. Appellant's Appendix at 382. However, in Allstate's February 27th reply letter, it stated that it had only received the medical and wage authorizations. Fields contends that he sent the proof of loss form with his February 20th letter. However, the designated evidence does not contain a copy of the completed proof of loss. Nevertheless, whether Fields sent his proof of loss form with his medical and wage authorizations does not establish a genuine issue of material fact that precludes the entry of partial summary judgment. Even if Fields sent a completed proof of loss form on February 20th when he sent his completed medical and wage authorizations, there is no indication that Allstate acted with ill will or conscious wrongdoing by delaying payment during that three-week period from when Fields said he sent the proof of loss form until the time that the Fieldses filed a bad faith claim against Allstate.

the time that Fields notified Allstate that he was making an uninsured motorist claim under the policy (January 9, 1997) and the time that the Fieldses filed a bad faith claim against Allstate (March 14, 1997), there is no indication that Allstate engaged in conduct that constituted bad faith. There was no indication that Allstate caused an unfounded delay in making payment or that Allstate acted with ill will or conscious wrongdoing by delaying any payments until Fields complied with the provisions of his insurance policy or until Allstate could obtain complete medical and wage information to evaluate the claim. *See Hoosier,* 745 N.E.2d at 310 (holding that a good faith dispute about the amount of a valid claim or whether a valid claim exists will not supply the grounds for a bad faith claim). Therefore, we conclude as a matter of law that Allstate did not act in bad faith. Accordingly, we hold that the trial court erred by denying Allstate's motion for partial summary judgment on the bad faith claim. *See, e.g., Spencer v. Bridgewater,* 757 N.E.2d 208, 212 (Ind.Ct.App.2001) (holding that the trial court properly granted partial summary judgment in favor of the insurer because there was no showing that the insurer engaged in ill will or conscious wrongdoing in denying the insured's uninsured motorist claim).

Because we hold that Allstate was entitled to partial summary judgment on the bad faith claim, and because that issue is dispositive, we do not reach the merits of the default judgment, settlement agreement, and motion in limine issues raised by Allstate. *See, e.g., Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins. Co.,* 779 N.E.2d 21, 23 n. 1 (Ind.Ct.App.2002) (holding that "[i]ssues which are unnecessary to a full and fair determination of an appeal will not be addressed"), *reh'g denied, trans. denied.* Because Allstate was entitled to partial summary judgment on the bad faith claim, it should not have had a default judgment entered against it on the bad faith claim. Had the trial court properly granted Allstate's motion for partial summary judgment on the bad faith claim, there would not have been a bad faith claim left to use as a sanction when the trial court found that Allstate had failed to comply with its order to file the statutory affidavit with its confession of judgment. A sanction of default on the bad faith claim, without regard to whether the default was otherwise appropriate, is in effect a restoration of the bad faith claim, and that is a sanction that the trial court cannot impose. Therefore, we reverse the trial court's entry of default on the bad faith claim as the sanction for the default judgment.

Furthermore, because Allstate has already confessed judgment, filed the statutory affidavit, and paid the policy limits into the trial court, we do not reach the issue of whether the trial court erroneously denied Allstate's motion to enforce the settlement agreement on the UMBI claim. Finally, because we hold that Allstate did not breach its duty of good faith, the issue of whether the trial court erred by granting the Fieldses' motion in limine precluding Allstate from presenting evidence of good faith is moot, and we will not address it.

For the foregoing reasons, we reverse the trial court's denial of Allstate's motion for partial summary judgment and its entry of default on the bad faith claim and remand to the trial court.

Reversed and remanded.

DARDEN, J., concurs.

ROBB, J., concurs with separate opinion.

ROBB, Judge, concurs with separate opinion.

I concur, but write separately to note my concern regarding Allstate's behavior once the Fieldses amended their complaint to add a bad faith claim against Allstate in March 1997. It seems clear to me that Allstate engaged in a pattern of evasion and delay once it was added as a party defendant. I acknowledge that Allstate's post-litigation behavior cannot be a basis for a bad faith claim already filed. *See* op. at 134–135. However, I simply note that the result herein is driven by the Fieldses' bad timing in filing their bad faith claim. All other things being equal, the result herein could have been significantly different for Allstate.

**J.B., Appellant–Defendant,**