**ALLSTATE INSURANCE COMPANY,**
**Appellant–Defendant,**

v.

**Ted K. FIELDS and Rosella M. Fields,**
**Appellees–Plaintiffs.**

No. 45A03–0612–CV–602.

Court of Appeals of Indiana.

May 8, 2008.

Rehearing Denied July 10, 2008.

Thomas D. Collignon, Patrick J. Dietrick, Collignon & Dietrick, P.C., Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale LLP, Indianapolis, IN, Jack A. Kramer, Hoeppner Wagner & Evans, LLP, Merrillville, IN, Ronald D. Getchey, Luce, Forward, Hamilton & Scripps LLP, San Diego, CA, Attorneys for Appellant.

Kenneth J. Allen, William Lazarus, Kenneth J. Allen & Associates, P.C., Valparaiso, IN, Attorneys for Appellees.

**OPINION**

MATHIAS, Judge.

A default judgment was entered against Allstate Insurance Company ("Allstate") in Lake Superior Court on a claim of bad faith filed by policyholders Ted and Rosella Fields ("the Fieldses"). Thereafter, a jury trial was held to determine the amount of damages. The jury awarded compensatory damages in the amount of two million dollars and punitive damages in the amount of eighteen million dollars. The trial court reduced the punitive damage award to six million dollars pursuant to Indiana Code section 34–41–3–4. Allstate appeals and raises the following dispositive issue:[1] whether the trial court erred when it denied Allstate's motion for partial summary judgment on the bad faith claim. We reverse and remand for proceedings consistent with this opinion.

**Facts and Procedural History**

On September 1, 1995, Ted Fields was involved in an automobile accident with Jimmy Woodley ("Woodley"), who was insured by Coronet Insurance Group ("Coronet"). Fields was insured by Allstate and his policy contained the following coverage limits: 1) medical payments of $1,000 for each person; 2) uninsured motorist property damage ("UMPD") of $10,000 for each accident; and 3) uninsured motorist bodily injury ("UMBI") of $50,000 for each person and $100,000 for each accident. The Fieldses filed a lawsuit against Woodley alleging negligence and loss of consortium. They also submitted medical bills to Allstate for payment and Allstate paid the $1000 medical coverage limits of the policy.

Coronet eventually went into liquidation, and therefore, on January 9, 1997, the Fieldses notified Allstate that they were pursuing an uninsured motorist claim. On January 16, 1997, Allstate acknowledged

---

1. Allstate also raised the following issues in this appeal: 1) whether the trial court abused its discretion when it entered default judgment against Allstate on the Fieldses' bad faith claim; 2) whether the trial court abused its discretion when it denied Allstate's motion to set aside default judgment; 3) whether the trial court erred when it refused to set aside orders entered by Judge Arredondo, who recused himself because he failed to disclose philanthropic activities with the Fieldses' attorney; 4) whether the trial court abused its discretion in instructing the jury and ruling on certain evidentiary issues during the damages trial; and 5) whether the compensatory and punitive damages awards were excessive.

receipt of the Fieldses' claim and requested that they complete Allstate's medical/wage authorization forms and Proof of Loss forms. Appellant's App. p. 214. In response, on January 30, 1997, the Fieldses sent a list of medical bills to Allstate, but acknowledged that its submission was incomplete and additional bills would be forwarded upon receipt. In the letter, the Fieldses also stated: "However, it is evident, based upon the currently available medical specials and wage loss, that this is a policy limit case. We therefore respectfully demand that you tender the limits of uninsured motorist coverage in this case at once." *Id.* at 292. On February 4, 1997, Allstate replied and stated:

Thank you for your letter of January 30, 1997 per the above captioned claim. I am in the process of reviewing the materials presented and will address your policy limits demand in the very near future.

In the meantime, I have enclosed a second set of medical/wage authorization forms and Proof of Loss forms. Per the policy contract, no offers of settlement will be made until [the Fieldses] complys [sic] with the policy. I trust these forms will be completed and returned at your earliest convenience.

*Id.* at 295.

Shortly thereafter, Allstate filed a petition to intervene in the lawsuit the Fieldses filed against Woodley. In the petition to intervene, Allstate alleged that 1) Woodley "was not the owner or operator of an 'uninsured automobile'" as defined within the terms of the policy issued by Allstate[,]" 2) the Fieldses "breached the policy conditions regarding notice of the accident, notice of the uninsured motorist claim, proof of claim, notice of legal action, and other policy conditions[,]" and 3) the Fieldses "caused or contributed to cause the accident complained of in their Complaint." *Id.* at 104.

On February 20, 1997, the Fieldses informed Allstate that they had provided complete records of Ted Fields's medical treatment for the injuries he sustained in the accident and further stated:

As you can see from the records, there is absolutely no evidence of any preexisting condition or treatment. Additionally, we have provided you with copies of wage loss verification from U.S. Steel, Mr. Fields' employer. The special damages in this case exceed $25,000. Moreover, Mr. Fields sustained a total loss of his automobile and a loss of use of the vehicle which we estimate exceeds $4500.

You recently requested new medical, wage and proof of loss authorizations. It is evident by these requests that you are not attempting in good faith to effectuate a prompt, fair and equitable settlement of this claim insofar as the liability of this uninsured motorist is crystal clear and it is similarly clear that Mr. Fields' damages far exceed the policy limits. Your actions violate your duty of good faith and fair dealing as well as I.C. § 27–4–1–4.5.

*Id.* at 718–19. The Fieldses also stated, "Your continued failure or refusal to pay the applicable UM policy limits is unreasonable, inequitable and in bad faith." *Id.* Shortly thereafter, Allstate replied that it had only received the medical/wage authorization forms and reiterated its request for the Proof of Loss form. Again, Allstate indicated that no settlement offer would be made unless the Fieldses submitted a Proof of Loss form as required by the policy. Allstate also requested photos and estimates concerning repairs to the automobile. Finally, Allstate's claims adjuster stated, "I assure you, I do not desire to delay in the handling of this claim.

The information requested in this letter will assist me in evaluating [the Fieldses'] injury claim." *Id.* at 720.

On March 14, 1997, the Fieldses moved for leave to file an amended complaint adding Allstate as a party defendant and alleging a bad faith claim against Allstate.[2] On March 25, 1998, Allstate filed a motion for partial summary judgment on the Fieldses' bad faith claim. Both before and after Allstate filed its motion, the parties' engaged in discovery, which was often contentious. Over the course of the next two years, the Fieldses filed three motions for default for alleged violations of discovery rules. The motions were denied. On February 27, 2001, the Fieldses responded to Allstate's motion for partial summary judgment. Allstate moved to strike their response as untimely. The trial court denied Allstate's motion to strike and denied .Allstate's motion for partial summary judgment. Allstate unsuccessfully petitioned the trial court to certify its denial of its motion for partial summary judgment.

For reasons that are not pertinent to the issue addressed in this appeal, the trial court granted the Fieldses' fourth motion for default judgment on February 3, 2003. The trial court then set the trial on damages for August 23, 2003. In July 2003, Allstate filed a motion for relief from default judgment, which the trial court denied. Allstate then filed a notice of appeal. In that appeal, our court initially addressed whether we had jurisdiction over the trial court's interlocutory orders, including the court's denial of Allstate's motion for partial summary judgment. *See Woodley v. Fields,* 819 N.E.2d 123, 130 (Ind.Ct.App.2004), *trans. granted* (*"Fields I"*). After determining that our court had jurisdiction, we concluded that "Allstate

was entitled to partial summary judgment on the bad faith claim," and therefore, "it should not have had a default ·judgment entered against it on the bad faith claim." *Id.* at 136. Therefore, our court reversed the trial court's denial of Allstate's motion for partial summary judgment and its entry of default on the bad faith claim. *Id.*

However, our supreme court granted transfer thereby vacating our court's opinion. The supreme court addressed only the jurisdictional issue, and concluded that our court did not have jurisdiction to address Allstate's appeal of the trial court's interlocutory orders. *See Allstate v. Fields,* 842 N.E.2d 804, 809 (Ind.2006).

On September 25, 2006, a jury trial commenced on the issue of damages. The Fieldses argued that Allstate's claims handling had caused Ted Fields to suffer two strokes, two heart attacks, and diabetes. The jury returned a verdict of two million dollars for compensatory damages and eighteen million dollars for punitive damages. The trial court reduced the punitive damage award to six million dollars pursuant to Indiana Code section 34–51–3–4. Allstate now appeals.

## Standard of Review

When we review the grant or denial of summary judgment, we use the same standard of review as the trial court. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Poznanski ex rel. Poznanski v. Horvath,* 788 N.E.2d 1255, 1258 (Ind.2003) (citing Ind. Trial Rule 56(C); *Tom–Wat, Inc. v. Fink,* 741 N.E.2d 343, 346 (Ind. 2001)).

**2.** Approximately one year later, the trial court granted the Fieldses leave to amend their

complaint.

We consider only those facts which were designated to the trial court at the summary judgment stage. We do not reweigh the evidence, but instead liberally construe the designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. *St. Joseph County Police Dept. v. Shumaker*, 812 N.E.2d 1143, 1145 (Ind.Ct.App. 2004), *trans. denied.*

### Discussion and Decision

■■■ Allstate argues that the trial court erred when it denied its motion for partial summary judgment on the Fieldses' bad faith claim. Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind.1993). In *Hickman*, our supreme court recognized a "cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith." *Id.* at 519. "The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.*

■■■ "[A] good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith." *Id.* at 520. "That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *Id.* Additionally, "the lack of diligent investigation alone is not sufficient to support an award." *Id.* On the other hand, an insurer that denies liability knowing that there is no rational, principled basis for doing so has breached its duty. *Id.*

Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will. A bad faith determination inherently includes an element of culpability.

*Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 714 (Ind.Ct.App.2007), *trans. denied* (citation omitted).

In *Fields I*, our court concluded that "any conduct that occurred after the Fieldses amended their complaint and filed their bad faith claim against Allstate in March 1997 is not relevant and will not be considered." 819 N.E.2d at 134. The Fieldses argue that our court erred in reaching that conclusion and assert that we should consider Allstate's conduct after the Fieldses moved for leave to file the amended complaint on March 14, 1997.

Importantly, the conduct giving rise to the alleged bad faith is not a claim denial. In *Gooch v. State Farm Mutual Automobile Insurance Co.*, 712 N.E.2d 38 (Ind.Ct. App.1999), *trans. denied*, we concluded, "if the incident giving rise to the bad-faith claim is not a claim denial, then evidence that arises after the filing of the bad-faith claim is not relevant." *Id.* at 42. Therefore, we held that conduct that occurred before the insured filed her bad faith claim was relevant to whether the insurer acted in bad faith, but conduct after the claim was filed was not relevant. *Id.* Citing *Gooch*, in *Fields I* we held that "it is that conduct that occurred prior to the Fieldses filing the bad faith claim against Allstate that is relevant." 819 N.E.2d at 134.

Our court's holding in *Fields I* was well reasoned and supported by Indiana law. Consistent with its holding, we will only consider Allstate's conduct prior to March 14, 1997, the date the Fieldses moved for leave to file their amended complaint, which alleged that Allstate had engaged in bad faith.

After the September 1995 accident, Allstate paid the Fieldses $1000, the limits of their medical payments coverage. On January 9, 1997, the Fieldses first notified Allstate that they intended to seek coverage under the uninsured motorist provision of their policy. Allstate sent standard medical/wage authorization forms and Proof of Loss forms to the Fieldses and stated that these forms had to be completed and returned as required under the policy. The Fieldses then sent a letter demanding the policy limits and an incomplete list of Ted Fields' medical expenses and lost wages. Allstate responded that it would address their policy limits demands in the near future and once again asked the Fieldses to complete the enclosed authorization and Proof of Loss forms.

The Fieldses submitted the requested medical/wage authorization forms on February 20, 1997, but failed to submit the Proof of Loss form.[3] The Fieldses also reiterated their demand for payment of the policy limits and alleged that Allstate's refusal to pay the policy limits constituted bad faith. One week later, Allstate sent another Proof of Loss form to the Fieldses and stated once again that completion of the form was required by the policy. Allstate also indicated that it did "not desire to delay in the handling of this claim." Appellant's App. p. 720. It also sought photos and repair estimates for the damage to the Fieldses' vehicle. On March 14, 1997, the Fieldses moved for leave to file an amended complaint adding Allstate as a party defendant and alleging that Allstate's delay in paying the policy limits constituted bad faith.[4]

■ The Fieldses argue that Allstate's unfounded delay in settling their claim "long after the company had the evidence that Ted's UMBI claim exceeded the policy limits" constitutes bad faith. Br. of Appellee at 30. In *Fields I*, our court addressed this argument and concluded:

Allstate informed Fields that it could not offer to pay any of the uninsured motorist coverage until he complied with his policy by submitting medical and wage authorizations and a proof of loss form. Between the time that Fields notified

3. In their brief, the Fieldses argue that the policy did not specifically require completion of the Proof of Loss form, but merely "written proof of claim." Br. of Appellee at 35. Regardless, the Fieldses' refusal to complete and submit Allstate's required Proof of Loss form contributed, at least to some extent, to the delay of settlement of their claim. Furthermore, in *Fields I*, our court observed, "[e]ven if Fields sent a completed proof of loss form on February 20th when he sent his completed medical and wage authorizations, there is no indication that Allstate acted with ill will or conscious wrongdoing by delaying payment during that three-week period" from February 20th to March 14th, the date the Fieldses filed the bad faith claim against Allstate. 819 N.E.2d at 135 n. 19.

4. Before the Fieldses moved to amend their complaint, Allstate filed a petition to intervene, and in that petition, Allstate alleged that the Fieldses "caused or contributed to cause the accident complained of in their Complaint." Appellant's App. p. 104. Allstate's assertion was not based on any fact and was unsupported by its own investigation of the accident. However, the Fieldses have not designated any evidence that would tend to support an inference that Allstate's false assertion in its petition led in any way to the delay of settlement in this case. Moreover, Allstate did not continue to assert that Ted Fields caused or contributed to the accident in any subsequent claims handling or litigation.

Allstate that he was making an uninsured motorist claim under the policy (January 9, 1997) and the time that the Fieldses filed a bad faith claim against Allstate (March 14, 1997), there is no indication that Allstate engaged in conduct that constituted bad faith. There was no indication that Allstate caused an unfounded delay in making payment or that Allstate acted with ill will or conscious wrongdoing by delaying any payments until Fields complied with the provisions of his insurance policy or until Allstate could obtain complete medical and wage information to evaluate the claim. *See Hoosier [Ins. Co. v. Audiology Found. of Am.],* 745 N.E.2d [300,] 310 [ (Ind. Ct.App.2001) ] (holding that a good faith dispute about the amount of a valid claim or whether a valid claim exists will not supply the grounds for a bad faith claim). Therefore, we conclude as a matter of law that Allstate did not act in bad faith. Accordingly, we hold that the trial court erred by denying Allstate's motion for partial summary judgment on the bad faith claim. *See, e.g., Spencer v. Bridgewater,* 757 N.E.2d 208, 212 (Ind.Ct.App.2001) (holding that the trial court properly granted partial summary judgment in favor of the insurer because there was no showing that the insurer engaged in ill will or conscious wrongdoing in denying the insured's uninsured motorist claim).

819 N.E.2d at 136.

As in *Fields I,* we conclude that the trial court erred when it denied Allstate's motion for partial summary judgment. For this reason, Allstate should not have had a default judgment entered against it on the bad faith claim. Accordingly, we reverse and remand to the trial court with instructions to vacate the jury's verdict and to enter summary judgment in favor of Allstate on the Fieldses' bad faith claim.

Reversed and remanded for proceeding consistent with this opinion.

FRIEDLANDER, J., and ROBB, J., concur.